642 A.2d 587

**Philip RETENAUER**

v.

**Thomas FLAHERTY, Anthony Pokora and Gilbert Martinez.**

**Appeal of CITY of PITTSBURGH, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 15, 1993.

Decided May 18, 1994.

184

George R. Specter, Deputy City Sol., for appellant.

Thomas Fitzgerald and David J. Armstrong, for appellees.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

The City of Pittsburgh (City) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) which determined that the City is responsible for payment of damages,[1] attorney's fees and litigation costs awarded to Philip Retenauer at the conclusion of his wrongful discharge, harassment and defamation suit against City Controller Thomas Flaherty, Anthony Pokora and Gilbert Martinez. These damages were awarded by the trial court based on a jury finding that Flaherty violated the Whistleblower Law.[2]

The underlying action commenced on November 6, 1989 with the filing by Retenauer of a complaint against Flaherty, Pokora and Martinez (law action). The complaint identifies Retenauer as an employee of the City Controller's Office, Flaherty as the City Controller, and Pokora and Martinez as employees of the Controller's office. The case caption identifies defendants only as individuals.

The complaint alleged the following: that in late September, 1989, Retenauer met with an investigator from the Pennsylvania State Ethics Commission (Commission) and presented evidence of wrongdoing in the Controller's office; that defendants subsequently retaliated against Retenauer by engaging in various modes of harassment; that the alleged harassment was in violation of the Whistleblower Law which protects from retaliation public employees who make a good faith report of

1. The City was never named or served in this proceeding until after the jury verdict.

2. Act of December 12, 1986, P.L. 1559, 43 P.S. §§ 1421–1428.

wrongdoing or waste to an appropriate authority, or who participate in an investigation of an employer.

On November 28, 1989, Retenauer filed an amended complaint in the law action wherein he added the claim that Pokora and Flaherty uttered slanderous remarks concerning Retenauer.

On June 29, 1990, Retenauer filed a second amended complaint in the law action adding counts of assault and defamation while alleging, *inter alia,* that Retenauer was dismissed by Flaherty on May 4, 1990 for participating in the Commission's investigation of the Controller's office, in violation of the Whistleblower Law.[3]

On April 30, 1990, Retenauer filed a separate action against Flaherty, Pokora and Martinez in the form of a complaint in equity/motion for injunctive relief (equity action). This complaint also alleged violations of the Whistleblower Law based on Retenauer's dismissal from employment and further alleged various additional incidents of harassment. Consistent with the amended complaints in the law action, Retenauer averred that defendants were acting at all times in both their individual and official governmental capacities.

Both the law and equity actions were consolidated for a jury trial. On March 28, 1991, the jury returned a verdict in favor of Retenauer on two of the six counts alleged in Retenauer's law action. The jury found that Retenauer was terminated from his position in violation of the Whistleblower Law, and that Flaherty intentionally, recklessly, or negligently made statements which were false and defamatory of Retenauer.[4]

3. Notably, in the amended complaint, Retenauer identifies Flaherty as the City Controller and as an individual, and avers that in all material matters Flaherty acted in both capacities. Martinez and Pokora are also identified as acting in their capacities as both individuals and employees of the Controller's office. In the second amended complaint, Retenauer adds that all three defendants were acting within the scope of their employment as agents of the City Controller, and as individuals.

4. The jury also found against Martinez, but all damage claims were dismissed against Martinez by agreement of the parties. The jury

On April 3, 1991, the trial court ordered that Retenauer be reinstated by April 8, 1991. In addition, the trial court awarded Retenauer back wages from the date of his dismissal, full reinstatement of fringe benefits and seniority rights, reasonable witness and counsel fees, and other damages to be determined. On July 30, 1991, the final judgment of the trial court assessed damages in the amount of $33,000 and costs of litigation in the amount of $45,000.

In accordance with the trial court's order, Retenauer was reinstated to his position with restoration of his fringe benefits and seniority rights. However, despite Retenauer's requests, the City refused to pay the damage award or costs including counsel fees. The City has maintained that this judgment is not an obligation of the City and should be paid by Flaherty from his personal assets. To the contrary, Flaherty contends that the judgment should be paid by the City.

In an effort to collect the award from the City, Retenauer filed a motion to assume jurisdiction and join additional defendants [5] requesting that the trial court assume jurisdiction and join the City, its Solicitor, its Director of Finance, and its Mayor as parties to determine which parties should be held in contempt for failure to comply with the trial court's order awarding damages to Retenauer. At a conference with counsel, the City offered that it would not be necessary for the Solicitor, Finance Director or Mayor to be added. Consequently, the trial court added only the City as an additional party.

On December 3, 1992, after consideration of the arguments concerning the issue of whether the City was properly a party and liable for the damages, the trial court found the City responsible for payment of one-half of the total damage award ($16,500) and all of the $45,000 litigation and counsel fee

cleared Pokora of all allegations of wrongful conduct leveled against him.

5. The trial court characterized the motion as a "Request for Supplemental Relief".

award.[6]  The City appeals from this determination.

On appeal, the City essentially raises four questions for our consideration:  (1) whether the trial court has the authority and/or jurisdiction to add the City as an additional defendant on motion by the plaintiff more than thirty days after entry of final judgment;  (2) whether the Whistleblower Law imposes liability on the City for payment of assessed damages when a city employee has been found guilty of discharging an employee in violation of the Whistleblower Law;  (3) if the Whistleblower Law does impose liability, whether the City is liable when it was not named in the complaint;  and, (4) whether an action in indemnity under what is commonly called the Political Subdivision Tort Claims Act is the proper recourse for a city employee found guilty of violating the Whistleblower Law who seeks to assert that the City is liable for a judgment against him.

First, we address the City's initial argument that the trial court lacked the authority to assume jurisdiction over Retenauer's motion to add the City as a party.  The City maintains that the trial court's actions amounted to a modification of its final judgment rendered on July 30, 1991.  In support thereof, the City points to section 5505 of the Judicial Code[7] which prohibits the modification or recision of any order more than thirty days after its entry.  Section 5505 provides as follows:

### Modification of orders

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the

6.  All damages for which the trial court held the City responsible stem from the act of Flaherty in terminating Retenauer.

7.  42 Pa.C.S. § 5505.

prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S. § 5505.

Pursuant to section 5505, the City argues, the trial court was without jurisdiction to act upon Retenauer's motion more than thirty days after July 30, 1991. We disagree.

■■■ While the July 30, 1991 order was a final disposition of the merits of Retenauer's suit, a clarification of the order, not a modification, was necessary with respect to which party (or parties) was responsible for payment of the award of damages. Indeed, the very crux of this appeal concerns the silence of the Whistleblower Law concerning who is liable for damages assessed by virtue of a violation of the Whistleblower Law. Accordingly, the trial court properly assumed jurisdiction in the matter, undertook consideration of the motion, and attempted to shed light on this matter of first impression. A review of the legal conclusions rendered by the trial court after its assumption of jurisdiction, however, is the province of this court.[8]

The trial court concluded that the City was liable for $16,500 in lost wages, and counsel fees and associated costs in the amount of $45,000 which Retenauer incurred to establish his wrongful discharge claim. Recognizing that the Whistleblower Law made no provision for what party shall be liable for an award entered in a lawsuit brought under the Whistleblower Law, the trial court imposed liability on the City because Retenauer was discharged by a public official, Flaherty, who had the authority to make this decision on behalf of the City, and therefore acted within the scope of his employment. Thus, the trial court concluded that one-half, or $16,500, of the $33,000 damage award is payable by the City because that figure represents lost wages. Further, the trial court deter-

8. We establish at this point that our scope of review is limited to determining whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Commonwealth Trust Co. of Pittsburgh Appeal*, 88 Pa.Commonwealth Ct. 618, 491 A.2d 929 (1985).

mined that the City was liable for the $45,000 in counsel fees and costs associated with obtaining Retenauer's reinstatement.

The trial court concluded that the remaining $16,500 of the $33,000 damage award is not the obligation of the City. The trial court reasoned that this amount was intended to compensate Retenauer for the mental anguish and humiliation he experienced as a result of the harassment. The trial court admitted that there was no evidence that any of the harassment was committed by or at the direction of Flaherty, and that none of this conduct was within the scope of employment of any employee of the Controller's office.

We now address the issue of whether the Whistleblower Law imposes liability on the City for payment of assessed damages when a City employee has been found in violation of the Whistleblower Law. Section 1423, the relevant provision of the Whistleblower Law under which Retenauer originally sought protection, provides:

## Protection of employees

(a) **Persons not to be discharged.**—No *employer* may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

(b) **Discrimination prohibited.**—No *employer* may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

43 P.S. § 1423 (emphasis added).

In the interest of clarity, we note that the definition of "employer" as set forth in section 1422 of the Whistleblower Law provides as follows:

"**Employer.**"  A person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body.

43 P.S. § 1422.  A "public body" is separately defined in section 1422 as, among other things, a county, *city,* township, school district, board, or commission.  *Id.*

When construing a statute, the starting point is the language therein, absent any evidence to the contrary.  A statute's plain meaning must prevail.  *Department of Environmental Resources v. City of Harrisburg,* 133 Pa.Commonwealth Ct. 577, 578 A.2d 563 (1990).  Particularly significant in the present case is the fact that the legislature chose to distinguish a "public body" from the definition of "employer" which suggests that the legislature intended "employer" and "public body" to have separate meanings and not to be interchangeable.  Noting that Flaherty is the employer and the City is the public body in the present case, we bear in mind the distinction made in the Whistleblower Law when examining the question of which party bears the liability after a violation is proven.

However, the Whistleblower Law does not expressly state which party is to pay damages awarded under section 1424(a), the remedy provision in the Whistleblower Law.  Section 1424(a) provides the following:

**Remedies**

(a) **Civil action.**—A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief *or damages,* or both, within 180 days after the occurrence of the alleged violation.

43 P.S. § 1424(a) (emphasis added).

The trial court determined that the City was responsible for payment of the damage award principally because Flaherty, as the head of a branch of government, acted within the scope of his authority in terminating Retenauer.  In his position of Controller, the trial court reasoned, Flaherty is entrusted with the authority to hire and fire employees under his charge at his discretion.  Such actions are within the "official capacity"

of the Controller. The trial court concluded that Flaherty exercised that discretion by terminating Retenauer, an action that fell within his authority and renders the City liable.[9] We agree with the trial court on this point.

█ Traditionally, under the provisions of the Political Subdivision Torts Claims Act (Tort Claims Act),[10] government officials are granted protection from the enforcement of judgments against them when they act within the scope of their employment. Section 8541 of the Tort Claims Act provides that a municipality is required to provide a public employee with indemnification for acts committed within the scope of the employee's employment for which the employee is held liable.

Moreover, this principle is analogous to the federal provisions embodied in 42 U.S.C.A. § 1983 which address the deprivation of an individual's constitutional rights under color of state or federal law.[11]

Courts at both the state and federal level have applied the section 1983 provisions to actions against individual public employees who are sued in their official capacities and have acted within the scope of their employment, and imposed liability on the public body for payment of damages. *Wiehagen v. Borough of North Braddock*, 527 Pa. 517, 594 A.2d 303 (1991) (borough ordered to indemnify a borough police officer for a damage award entered in a federal action predicated on the use of excessive force in making an arrest); *Bender v. Williamsport Area School District*, 475 U.S. 534, 106 S.Ct.

---

9. We note that in its opinion the trial court repeatedly characterizes the reason for Retenauer's termination as "insubordination". To the contrary, the jury specifically found that Retenauer was terminated for making a good faith report of wrongdoing or waste in the Controller's office to the Commission.

10. 42 Pa.C.S. §§ 8541–8542.

11. 42 U.S.C.A. § 1983 provides in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

1326, 89 L.Ed.2d 501 (1986) (school district ordered to satisfy monetary judgment against school board directors acting in their official capacities); *Williamsburg Community School District v. Pennsylvania Human Relations Commission,* 99 Pa.Commonwealth Ct. 206, 512 A.2d 1339 (1986).

In the present action under the Whistleblower Law, Flaherty has no ability to fully satisfy the damage award entered against him in his official capacity. Flaherty may be capable of reinstating Retenauer to his former position and granting him his rights to accumulated seniority and benefits, but Flaherty cannot accommodate the trial court's order to pay Retenauer back wages, for example. Only the City can fully compensate an employee with monies from the municipal treasury. This separation of function within the political system is made even more clear when we consider that in this case, Flaherty, as Controller, is the elected auditor of the disbursements from the public purse. As such, Flaherty can have no control over disbursement of the funds necessary to comply with the judgment, and therefore cannot completely satisfy the damage award.

It is clear, therefore, that in actions under the Whistleblower Law, the custodian of the public purse, the public body, is the sole party capable of satisfying the remedies contemplated by section 1424.

However, in the above cases litigated under section 1983, the public body is named in the suit brought against the public employee acting in his official capacity. In light of this distinction, the U.S. Supreme Court has made room for an exception to the general principle that in section 1983 cases the public body must indemnify the employee who acts within his scope of employment.

In *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), a judgment was entered against the director of the Memphis Police Department in his official capacity. Like the present case, the City of Memphis was not named as a party. The issue before the court was whether the judgment was payable by the City of Memphis or whether the Police Di-

rector was individually liable. The court held that the City of Memphis was responsible for the judgment, but cautioned:

> In at least three recent cases arising under § 1983, we have plainly implied that a judgment against a public servant "in his official capacity" imposes liability on the entity that he represents *provided, of course, the public entity received notice and an opportunity to respond.* We now make that point explicit.

*Id.* at 471, 105 S.Ct. at 877 (emphasis added).

Moreover, the Supreme Court in *Brandon* determined that the plaintiff "made it abundantly clear that the action against the Director was in his official capacity and only in that capacity, and that petitioners claimed a right to recover damages from the city." 469 U.S. at 464, 105 S.Ct. at 873.

As in *Brandon*, it is beyond contention that in the original suit from which the present case arises, the City was not named as a party. However, unlike the City of Memphis in *Brandon*, there is no evidence of record that the City of Pittsburgh in the present case was afforded notice and an opportunity to be heard; nor is it evident that Retenauer made it "abundantly clear" that the action was against Flaherty in his official capacity only. In fact, Flaherty was named in the caption to both complaints as an individual only.

By contrast to the *Brandon* case, in addition to not being named as a party in either action filed by Retenauer, or the amended complaints to the first action, the City was not granted the opportunity to participate in the negotiations which settled all damage claims against defendant Martinez.

Additionally, at the commencement of the underlying actions, Flaherty, who was alleged to have acted in *both* his individual and official capacities, sought his own private counsel in defense. Again, this fact is dissimilar to the complaint in *Brandon* where the Supreme Court found that the suit was brought against the Director of Police in his official capacity only.

The result of these oversights was to deny the City, who both the trial court and this court have rendered the responsi-

ble party, the opportunity to present a case, offer evidence, cross-examine witnesses, and exploit any other procedural remedy rightfully available to it as a named defendant. As then Chief Justice Burger stated in his concurring opinion in *Brandon:*

> It does not make a fetish out of orderly procedure to say that if a claimant seeks damages from a municipality, this should be done by making it a named party defendant; that will assure the municipality has notice and an opportunity to respond.

*Id.* at 475, 105 S.Ct. at 879.

■ Accordingly, we hold that if the actions constituting a violation of the Whistleblower Law fall within the scope of the public employee's authority, when acting only in his official capacity, the public body shall be responsible for any damages awarded the plaintiff, so long as the public body is afforded sufficient notice of the action, and an opportunity to participate in the proceedings.

■ Here, under the Whistleblower Law, the City rightfully should be the responsible party in satisfying the damage award in Retenauer's favor. Notwithstanding that premise, because Retenauer failed to name the City as a party to the suit, in accordance with *Brandon,* we are constrained to exonerate the City from any and all liability for which it may have otherwise been responsible and for which the trial court assigned responsibility.

This conclusion should not be read to automatically shift liability to Flaherty as the remaining named defendant. On the contrary, we have determined that the City is the only party responsible for satisfying a judgment under the Whistleblower Law. The failure to name the City presents us with no alternative but to vacate the trial court's December 3, 1992 order which decreed that the City is responsible for payment of the damage award.[12]

12. The December 3, 1992 order was the adjudication from which Retenauer appealed to this court. In vacating that order, we note that paragraphs (1) and (4) of the July 30, 1991 order, reinstating Retenauer

Finally, it is clear that an action under the Tort Claims Act, which mandates specific procedures for indemnification by municipalities for judgments rendered against public employees, is the proper recourse for a public employee faced with such judgment when the public body is not named in the suit. To the extent that a public employee against whom a claim has been entered possesses the right to indemnification, the employee's rights are governed by the indemnity provisions of the Tort Claims Act. Section 8548 sets forth the provisions and conditions which must be satisfied in order for indemnification to be properly applied. Section 8548 relevantly provides:

**Indemnity**

(a) **Indemnity by local agency generally.**—When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, *and he has given timely prior written notice to the local agency,* and it is judicially determined that an act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties, the local agency shall indemnify the employee for the payment of any judgment on the suit.

42 Pa.C.S. § 8548 (emphasis added).

In order for the right to indemnification to apply, there also must be compliance with section 8550 of the Tort Claims Act which states that the public employee's conduct must not constitute a crime, actual fraud, actual malice, or willful misconduct. 42 Pa.C.S. § 8550.

It is clear, therefore, that the appropriate procedure for Flaherty to have followed was the indemnification action spelled out in the Tort Claims Act. Flaherty could have placed the City on notice at the commencement of the original action, and then continued with a proceeding to determine the nature of his actions, whether those actions were within the

to his position with full restoration of fringe benefits and seniority rights, and dismissing the claims against Pokora and Martinez, remain intact.

scope of his office or duties, and whether the actions constituted actual malice or willful misconduct.

The statutory liability of the City under the Tort Claims Act would then have been properly adjudicated. The trial court erred in advancing directly to adjudicate the propriety of indemnification when the City was not a party throughout the proceedings under the Whistleblower Law. The City, therefore, lacked an opportunity to defend itself, and the present appeal may have been avoided.

We determine that compliance with the statutorily specific procedures for indemnification as outlined in the Tort Claims Act is the proper avenue for an employee of a local agency as a violator to pursue if the public body is not named as a party to the suit brought under the Whistleblower Law. Only by choosing this course can both the employee and public body be assured of a fair opportunity to litigate the pertinent issues and defend against liability.

Accordingly, because we have concluded that (1) the City is generally the responsible party for satisfaction of damages under the Whistleblower Law; (2) the City was not named as a party in this suit; (3) the City was not afforded sufficient notice of the action, nor provided an opportunity to defend itself; and, (4) there was no indemnification action under the Tort Claims Act, we reverse the trial court's determination that the City is responsible for payment of $16,500 of the damage award and $45,000 in costs of litigation, and vacate the December 3, 1992 monetary damage award in those respective amounts.

PELLEGRINI, J., did not participate in the decision in this case.

## ORDER

NOW, this 18th day of May, 1994, the order of the Court of Common Pleas of Allegheny County, dated December 3, 1992, at Nos. G.D. 89–19403 and G.D. 90–07635, is hereby reversed and vacated in accordance with this opinion.