**NORRISTOWN FRATERNAL ORDER OF POLICE, LODGE 31, by Charles SANTANGELO, Trustee Ad Litem and John Murray, Appellants,**

v.

**BOROUGH OF NORRISTOWN and Thomas Stone, Jack Salamone, John McGuigan, April Young, Ervin Jones, Christopher Booth, Joseph Dedominic.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1995.

Decided June 23, 1995.

J. David Farrell, for appellants.

Thomas D. Rees, for appellee Thomas W. Stone.

Before DOYLE and NEWMAN, JJ., and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

Norristown Fraternal Order of Police, Lodge 31, by Charles Santangelo, Trustee Ad Litem and John Murray (FOP), appeal from the order of the Court of Common Pleas of Montgomery County, which denied FOP's petition for review and affirmed the appointment of Thomas W. Stone (Stone) as Chief of Police for the Borough of Norristown (Borough). We affirm.

On November 10, 1993, then-Mayor William DeAngelis[1] notified the Borough Civil Service Commission (Commission) that he had appointed Stone as Chief of Police, effective November 29, 1993. Stone had been the Director of Public Safety for the Borough beginning on November 4, 1991, after the Borough had conducted a nationwide search to fill the position. He had previously served as Chief of Police in Manassas Park and Bristol, Virginia, and Director of Public Safety for Dade County, Miami, Florida. Mayor DeAngelis requested that the Commission administer an oral, noncompetitive examination to Stone, pursuant to Section 306 of the Rules and Regulations of the Norristown Civil Service Commission (Civil Service Rules and Regulations). The Commission did so by retaining Ronald Smeal, president of the Pennsylvania Chiefs of Police Association, to administer the examination.

The examination was administered to Stone on December 8, 1993, and the results were received by the Commission on December 17, 1993. The Commission found Stone to be qualified for the position of Chief of Police, certified him, and reported this to the Borough Council. The Borough Council then approved the appointment, and Stone was sworn in on December 22, 1993. Stone had also executed an employment agreement with the Borough, which was approved by the Borough Council at a special meeting on December 10, 1993. On January 18, 1994, the new Borough Council reaffirmed Stone's appointment and the Employment Agreement.

On December 30, 1993, FOP filed a petition for review and declaratory judgment seeking to have Stone's appointment set aside as unlawful and to have the office of Chief of Police declared vacant. FOP subsequently filed an application for preliminary injunction on January 5, 1994, seeking to prevent Stone from executing the functions of Chief of Police and seeking to have the office declared vacant until a full hearing could be held on the merits. On January 21, 1994, the trial court denied FOP's request for a preliminary injunction. After a hearing on the merits,[2] the court denied the petition for review on the grounds that the alleged procedural irregularities in the make-up of the Commission were not significant enough to void what was essentially a ministerial act in appointing Stone as Chief of Police. FOP has now appealed to this Court, continuing to seek Stone's removal from the position of Chief of Police.

■ FOP has raised two issues for our review:[3] (1) whether Stone's appointment was unlawful under the civil service provisions of The Borough Code,[4] the Norristown Home Rule Charter, and the Civil Service Rules and Regulations; and (2) whether the contract for employment between Stone and the Borough was unlawful as outside the scope of the Council's legislative authority and for failing to comply with all applicable civil service statutes, ordinances, rules and regulations.

■ FOP claims, initially, that Stone's appointment was unlawful due to a December 29, 1993 order of the trial court (1993 Order) which declared null and void the 1992 Civil Service Rules and Regulations and Borough Ordinance 90–11, which would have increased

---

1. Mayor DeAngelis lost a re-election bid in November 1993, and would be replaced as of January 1994.

2. FOP filed an amended petition on February 9, 1994 and the hearing was held on February 10, 1994.

3. Our scope of review of a trial court decision is limited to determining whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Retenauer v. Flaherty*, 164 Pa.Commonwealth Ct. 182, 642 A.2d 587 (1994).

4. Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501.

the Commission from three to five members.[5] It argues that if the 1993 Order invalidates the Rules *ab initio*, then despite requirements in The Borough Code and the Norristown Home Rule Charter that the Commission be guided by rules and regulations, there were no rules and regulations in this case. We do not agree.

Section 4–64B of the Norristown Administrative Code (Administrative Code) provides:

> (1) *Except for the position of Chief of Police*, all appointments to and promotions for the Police Department shall be made in accordance with borough ordinances and the rules and regulations of the Borough Civil Service Commission.
>
> (2) When there is a vacancy in the office of the Chief of Police, the Mayor shall have the authority to appoint a duly qualified person to the position of Chief of Police, subject to confirmation by the Civil Service Commission that such person is duly qualified for the position of Chief of Police.

(Emphasis supplied.) Under this provision, only positions other than Chief of Police are dependent upon and subject to the Civil Service Rules and Regulations. Stone's appointment as Chief of Police was authorized and governed by Section 4–64B(2) which makes no mention of the Rules and Regulations. Moreover, Section 1184 of The Borough Code, 53 P.S. § 46184, provides for the appointment of the Chief of Police without regard to Civil Service Rules and Regulations, as follows, in pertinent part:

> (c) In the case of a vacancy in the office of chief of police or chief of the fire department, or equivalent office, the appointive power may nominate a person to the commission. It shall thereupon become the duty of the commission to subject such person to a non-competitive examination, and if such person shall be certified by the commission as qualified, he may then be appointed to such position.

Clearly, Mayor DeAngelis had the statutory authority, independent of the Civil Service Rules and Regulations, to appoint Stone to the position of the Chief of Police. Accordingly, the 1993 Order is irrelevant to our ruling on the validity of the appointment, which will be dealt with below.

■ FOP also argues that regardless of the 1993 Order, Stone's appointment was unlawful for failure to strictly comply with the Civil Service Rules and Regulations. Specifically, it argues that the Borough failed to comply with the following provisions:

> 305. Qualifications—Positions above entry-level.
>
> In addition to the qualifications described in 303, an applicant seeking promotion shall:
>
> (a) have been continuously employed as a Norristown Police Officer or Firefighter for at least four (4) years prior to last date for filing an application.
>
> . . . .
>
> 607. Examination for Chief of Police.
>
> The examination for Chief of Police shall be governed by 305.

FOP contends that Stone does not qualify for the position of Chief of Police because he does not meet the four-year service requirement contained in Section 305(a). We agree with the trial court, however, that FOP's contention is inappropriate because the four-year service requirement does not apply to the position of the Chief of Police. (*See* trial court opinion at 5.)

Section 305 pertains to applicants seeking *promotion*, which is defined in Section 102 of the Civil Service Rules and Regulations as "the appointment of an officer to a higher rank." In this case, Stone was not being promoted to the position of Chief of Police from within the ranks of the police department. He was already the Borough's Director of Public Safety. His appointment was governed by Section 306 of the Civil Service Rules and Regulations, which provides:

---

5. The validity of the regulations and the ordinance was the subject of a prior appeal to this Court. *See Norristown Fraternal Order of Police v. DeAngelis,* 148 Pa.Commonwealth Ct. 285, 611 A.2d 322 (1992). This decision resulted in a remand to the Commission, another appeal to the trial court and the December 29, 1993 order.

Qualifications—Chief of Police

Applicants for the position of Chief of Police shall have served in a high level position of command responsibility in a police agency for at least ten (10) years and have extensive knowledge of the principles and practices of modern police administration and police methods.

Whenever a vacancy occurs in the position of Chief of Police, the Mayor may nominate a duly qualified person to the Commission. The Commission shall then give the nominee an oral, non-competitive examination and if such person is certified by the Commission as qualified, the nominee may then be appointed.

It is clear that Section 306 pertains specifically to the position of Chief of Police and its requirements are in fact much more stringent than the four-year service requirement in Section 305. The record demonstrates that Stone met the minimum qualifications required by Section 306 in terms of his professional experience, and that he passed a four hour non-competitive examination and was certified by the Commission as qualified.

In seeking to have Stone's appointment declared unlawful, FOP also claims that the Commission which passed upon his qualification was unlawfully constituted such that any action it took was invalid. Specifically, it contends that the Commission was appointed by resolution, rather than by ordinance, and that the appointment took place at a special meeting, which was not properly advertised under the Administrative Code. Without addressing the specific allegations, the trial court found that the alleged irregularities were "completely procedural in nature," and not fatal to Stone's appointment. (See trial court opinion at 7.) Although we agree with the trial court's decision that the Commission's role in Stone's appointment was ministerial and peripheral,[6] we will address the alleged defects in its make-up.

■ Section 512A of the Norristown Home Rule Charter provides that Borough Council shall, *inter alia,* create commissions. FOP contends that this must be accomplished by an amendment to the Administrative Code, which requires passage of an ordinance. (See Section 401 and 410 of the Norristown Home Rule Charter.) In this case, the commissioners comprising the Commission who acted on Stone's appointment were appointed by resolution. We conclude that this was proper and does not invalidate the appointment.

The Commission had already been "created" at the time the new commissioners were appointed. Section 1172 of The Borough Code, 53 P.S. § 46172, creates a three-member Civil Service Commission in each borough. All that the Mayor and Council did during the time period in question was to appoint new members. The Administrative Code does not require an ordinance to appoint members. The Mayor and Council followed the procedure delineated in Section 512B of the Administrative Code, which provides only that the Mayor shall appoint Commission members by affirmative vote of at least four Borough Council members.

■ Lastly, FOP contends that it was unlawful for the three new commissioners to have been appointed at a special meeting of Borough Council. The stated purpose of the December 10, 1993 meeting, contained in the notice, was to act on a resolution regarding the appointment of the Chief of Police, and "such other business as may come before the meeting." (Notes of Testimony at 101–102.) FOP claims that this violates the notice requirements for special meetings in the Administrative Code, which provides that notice shall specify the business to be transacted and that "[n]o other business shall be considered at such meeting by the Council." (Section 4–8C of the Administrative Code.)

The Administrative Code also provides, however, that the published agenda may be amended at any meeting by a majority of Council members present. (Section 4–8H(4)

---

6. In the appointment of Stone as Chief of Police, the only role of the Commission was to administer the examination and to certify him as qualified. The Commission is much more involved in the appointment of other positions within the police department. Under Section 1184(a) of

The Borough Code, 53 P.S. § 46184(a), every position other than the chief must be filled by the Commission preparing a certification of a list of eligibles and then, after the council makes an appointment from the list, ruling on any objections to that candidate.

of the Administrative Code.) In this case, the minutes of the December 10, 1993 special meeting indicate that the agenda was amended to add the appointment of the new Commission members. (R.R. at 341a.)

Accordingly, we conclude that the Commission that acted on Stone's appointment was not unlawfully constituted so as to invalidate its actions.

The final issue raised by FOP concerns the validity of the Employment Agreement entered into by Stone and the Borough.[7] Generally, it argues that the Borough used the Agreement to give Stone civil service status, without satisfying the procedural dictates of the Civil Service Rules and Regulations. FOP claims that the use of the Agreement circumvents and undermines the civil service process. We do not agree with FOP's arguments.

■ First of all, although the Employment Agreement was signed on December 10, 1993, before Stone was certified for the position of Chief of Police by the Commission, the Borough Council cured any defect by reaffirming the Agreement twice, after the Commission acted on his appointment. (*See* Borough Council Resolution 93–163, dated December 17, 1993, and Resolution 94–105, dated January 18, 1994; R.R. at 347a–348a and 351a.) The Borough Council's actions in reapproving the Agreement, after the change in administration, corrected any procedural deficiency in the timing of Stone's contract, and prevents any claim that the Agreement was invalid as a "lame duck" contract. *See, e.g., Falls Township v. McManamon,* 113 Pa.Commonwealth Ct. 504, 537 A.2d 946 (1988).

■ Secondly, we are satisfied that the Employment Agreement does not violate the Civil Service Rules and Regulations or The Borough Code. As previously discussed, the Mayor appointed Stone in compliance with the Administrative Code and the Civil Service Rules and Regulations. Contrary to

FOP's assertions, an Employment Agreement signed by Borough Council does not undermine the Mayor's appointive power or the authority, granted by The Borough Code, "to have full charge and control of the chief of police." (Section 1121 of The Borough Code, 53 P.S. § 46121.) The Borough Code gives Borough Council the discretion to approve contracts for personal services, such as Stone's Employment Agreement. (Section 1402 of The Borough Code, 53 P.S. § 46402.)

Finally, we reject FOP's argument that the discharge procedures contained in the Employment Agreement circumvent the civil service process. The Borough Code permits Borough Council to dismiss a chief of police regardless of civil service protection (Section 1121 of The Borough Code, 53 P.S. § 46121) and would not preclude the discharge procedures afforded Stone, including the right to a Council hearing.

Accordingly, we conclude that the Employment Agreement between Stone and the Borough Council is valid.

### ORDER

AND NOW, this 23rd day of June, 1995, the order of the Court of Common Pleas of Montgomery County is affirmed.

NEWMAN, Judge, dissenting.

I respectfully dissent and would reverse the order of the trial court because the Mayor and Council Borough violated certain provisions of its Home Rule Charter. Specifically, the violations concerned the composition of the Borough's Civil Service Commission (Commission). Because these violations expressly involved the legal authority of the Commission to act, its certification of Officer Stone was void.[1]

On June 5, 1990, the Borough Council enacted Ordinance 90–11. Section I of the Ordinance established a five-member Commission. Specifically, the section provided:

---

7. The trial court did not reach the merits of this issue, concluding that because there was no actual controversy concerning the contract between the parties, declaratory judgment was inappropriate.

1. Section 306 of the Borough Civil Service Rules governs the appointment of a Chief of Police. Pursuant to the section, the Borough Commission's certification is an essential condition precedent to a valid appointment to the position.

There is hereby created a Civil Service Commission for the Home Rule Municipality of the Borough of Norristown. The Mayor shall appoint a Civil Service Commission consisting of five (5) members. All appointments of members to said Commission shall be subject to the approval and confirmation of the Borough Council by an affirmative vote of four (4) members of Council.

Subsequently, following a challenge to the legality of the Commission, Judge Richard S. Lowe of the Court of Common Pleas of Montgomery County, invalidated the creation of the five-member Commission in a decision dated November 3, 1993. Immediately after that, on November 30, 1993, the Borough Council modified Ordinance 90–11 by passing Resolution 93–156, which established a three-member Commission.

The FOP argues that the Borough Council's establishment of a three-member Commission was in violation of certain provisions of the Norristown Home Rule Charter (Borough Charter). I agree.

Section 512(d) of the Borough Charter provides that "[t]he Council shall, in the Administrative Code, provide civil service rules and regulations ... creating a civil service Commission." Moreover, Section 410 of the Borough Charter requires that the provisions of the Administrative Code be adopted by Ordinance. Finally, Section 401 of the Borough Charter provides in pertinent part:

A. The Council shall exercise by ordinance those powers and duties which:

&ast; &ast; &ast; &ast; &ast; &ast;

4. Establish or amend an Administrative Code.

&ast; &ast; &ast; &ast; &ast; &ast;

7. Amend or repeal ordinances previously adopted.

I would hold that because of these sections, the Borough Council improperly proceeded by Resolution in modifying Ordinance 90–11 when it was mandated to act by Ordinance.[2] It is clear that in passing Resolution 93–156, the Borough Council was attempting to amend the Administrative Code as well as to amend Ordinance 90–11. Consequently, the Borough Council's action renders the certification of Officer Stone invalid. *See Morris v. Goode*, 107 Pa.Commonwealth Ct. 529, 529 A.2d 50 (1987) (in which court held that where a home-rule charter mandates action by Ordinance, the failure of the municipality to do so renders the action void).

The majority resolves this issue by holding that "[a]ll that the Mayor and Council did during the time period in question was to appoint new members. The Administrative Code does not require an [O]rdinance to appoint new members." Majority Opinion at 1155. I disagree. As demonstrated above, the Borough Council, in passing Resolution 93–156, was attempting to amend the Administrative Code as well as to amend Ordinance 90–11. According to the Borough Charter, such action had to be accomplished by Ordinance. The failure to do so was fatal. Accordingly, I would reverse.

---

**2.** The Borough's Charter sets forth several significant differences between a Resolution and an Ordinance. Specifically, a Resolution does not require advance advertisement. Moreover, it requires only an affirmative vote of a majority of the members present at a meeting. An Ordinance, on the other hand, requires advance advertisement, public posting, preliminary and final approval and publication.