**R. Larry BURKHART, Administrator of the Estate of Susan L. Fyock, Deceased, Plaintiff,**

v.

**Craig A. KNEPPER, individually, and in his capacity as a Police Officer of the City of Johnstown Police Department, William Clark, individually, and in his capacity as Police Chief of the City of Johnstown Police Department, City of Johnstown Police Department, a political subdivision, Donato Zucco, individually, and in his capacity as mayor of the City of Johnstown, City of Johnstown, a municipal corporation, Defendants.**

Civil Action No. 03–60J.

United States District Court, W.D. Pennsylvania.

March 25, 2004.

Timothy J. Schweers, Pittsburgh, PA, for Plaintiff.

David L. Haber, Weinheimer, Schadel & Haber, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION AND ORDER OF COURT

GIBSON, District Judge.

### SYNOPSIS

This case is before the Court on the Defendant Clark's (hereinafter "Clark"), Defendant City of Johnstown Police Department's (hereinafter "Department"), Defendant Donato Zucco's (hereinafter "Zucco") and Defendant City of Johnstown's (hereinafter "Johnstown") joint Motion to Dismiss. For the reasons set forth in following Memorandum Opinion, the Motion to Dismiss is denied in part and granted in part.

### FACTUAL BACKGROUND

On June 10, 2002 Susan L. Fyock (hereinafter "Fyock") was shot and killed by Craig A. Knepper (hereinafter "Knepper") when Knepper fired his service revolver at

Fyock in the presence of Fyock's four year old son. Complaint ¶ 27. Knepper was employed by the City of Johnstown Police Department at that time. Complaint ¶ 19. Knepper is currently incarcerated. Complaint ¶ 6.

At the time of Fyock's killing, William Clark was the Chief of Police of the Johnstown Police Department and Donato Zucco was Mayor of the City of Johnstown. Complaint ¶ ¶ 7, 8.[1] Clark was Knepper's commanding officer and responsible for executing the "policies, customs, rules and regulations" of the Department and Clark's "edicts or acts . . . represented the official policy of the City of Johnstown pertaining to police duties, actions, responsibilities, training, supervision, conduct and all other matters connected with the City of Johnstown Police Department."[2] Complaint ¶ ¶ 7, 10, 11. Zucco was in charge and control of the Department and Clark and "was responsible for the overall training and conduct of [Clark] as the Chief of Police, and the entire [Department]" and was "responsible by law for ensuring that the City of Johnstown police officers obey the regulations of the [Department] and the laws of the Commonwealth of Pennsylvania and the Untied States."[3] Complaint ¶ ¶ 8, 12, 13. Johnstown employed Knepper, Clark, and Zucco at all relevant times. Complaint ¶ 9. Complaint ¶ 19. Knepper "has a history of violent behavior, drug abuse, alcohol abuse and anti-social proclivities which the [Department] knew about or should have known about in the exercise of reasonable diligence." Complaint ¶ 20. Knepper exhibited such vio-

lent behavior toward Fyock and this fact was known by the Department. Complaint ¶ 21. "[A]gents, servants and/or employees of [Department] were called several times to [Fyock's] residence in order to investigate the violent behavior which [Knepper] exhibited toward [Fyock], however, no charges were ever filed against him." Complaint ¶ 22. Knepper also "exhibited violent behavior and/or abused drugs and alcohol while on the job as a police officer with [Department], which behavior was known by the [Department] or should have been known by it in the exercise if [sic] reasonable diligence." Complaint ¶ 23. The Department investigated complaints against Knepper regarding his behavior and substance abuse, but never took any official action such as suspension, removal of his firearms or removal from active duty. Complaint ¶ 24. The employees of the Department were aware of Knepper's threats of bodily harm to Fyock. Complaint ¶ 25.

## PROCEDURAL BACKGROUND

On March 20, 2003, R. Larry Burkhart (hereinafter "Plaintiff"), as administrator of the Fyock estate, filed a Complaint in this Court. The Complaint sets forth fifteen counts: five counts based upon 42 U.S.C. § 1983, five counts based upon the Pennsylvania action of wrongful death and five counts based upon a Pennsylvania survival action with each Defendant being alleged to be liable under each of the three actions. On May 27, 2003, Defendants, Clark, Zucco, Department and Johnstown

1. Paragraph 8 of the Plaintiff's Complaint should be numbered paragraph 9 because the Plaintiff sets forth two paragraphs numbered 7.

2. This statement includes a legal conclusion as to Clark's responsibilities and the effect of his acts and edicts, which, in our review, is

not set forth in the City of Johnstown Home Rule Charter.

3. This statement includes legal conclusions as to Zucco's responsibilities. The analysis, *infra*, will reveal the extent to which this statement is true in accordance with the City of Johnstown's Home Rule Charter.

filed a Motion to Dismiss and Brief in Support of Motion to Dismiss. On June 16, 2003, Plaintiff filed a Brief in Opposition to Defendant's Motion to Dismiss and the above mentioned Defendants filed a reply Brief in Support of Motion to Dismiss on June 30, 2003. This matter was assigned to the Honorable Kim R. Gibson on October 27, 2003.

## ANALYSIS

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12 (b) (6):

> the district court [is] required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989); *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *D.P. Enters.*, 725 F.2d at 944.

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3rd Cir.1994). In considering a motion to dismiss, the Court is not deciding the issue of whether a plaintiff will ultimately prevail but is deciding if the plaintiff is entitled to offer evidence to support claims. *Lake v. Ar-*

*nold*, 112 F.3d 682 (3rd Cir.1997); *Nami v. Fauver*, 82 F.3d 63 (3rd Cir.1996).

## I. § 1983 CLAIMS

The Court will first address the § 1983 claims.

■ Department moves for dismissal of the 42 U.S.C. § 1983 claim in its motion and sets forth a more specific argument in favor of dismissal in footnote number 2 of its brief. As Judge Mencer, formerly of this Court, has held:

> While *Monell* clearly holds that a local government is a person subject to suit, 436 U.S. at 690, 98 S.Ct. at 2036, we reject plaintiffs' argument that each governmental sub-unit or department is a person distinct from the government at large. The City of Erie Police Department is a subunit of the city government and, as such, is merely a vehicle through which the city fulfills its policing functions. *See Williams v. Dayton Police Department*, 680 F.Supp. 1075, 1080 (S.D.Ohio 1987), citing *Shelby v. City of Atlanta*, 578 F.Supp. 1368 (N.D.Ga. 1984); *Elam v. Montgomery County*, 573 F.Supp. 797 (S.D.Ohio 1983). The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a section 1983 action have unanimously reached the conclusion that it is not.

*Johnson v. City of Erie, Pa.*, 834 F.Supp. 873, 878–879 (W.D.Pa.1993). Therefore, the Department is dismissed as a Defendant under the § 1983 claim.

The Court moves on to the Defendants Clark, Zucco and Johnstown's (hereinafter referred to as "Moving Defendants") argument regarding the dismissal of the § 1983 claims. The Moving Defendants state that, although the Complaint is unclear as to what theory is being pursued by the Plaintiff, they argue in the alternative the following: 1) that Knepper was not on-

duty, was not conducting police business nor was he acting under color of law when he shot Fyock and that the acts involving the shooting were part of a domestic dispute; 2) that municipal liability does not exist as the Complaint does not allege a relationship between a policy or custom of Johnstown and the murder of Fyock; 3) that liability could not exist under the State Created Danger Theory because Fyock was not a foreseeable victim in the context of a tort in that the "state" deprived her of the liberty necessary to care for herself; and 4) that liability cannot attach to Clark or Zucco merely because of respondeat superior or their supervisory capacities as "[p]ersonal involvement in the challenged conduct is required" but that liability can attach only upon execution of a policy or custom that "inflicts the injury that the government as an entity is responsible [for] under § 1983." Defendants' Brief in Support of Motion to Dismiss, pp. 4, 6.

In response, the Plaintiff states that his legal theory is the *de facto* policy of deliberate indifference of the Moving Defendants in failing to properly screen, train, supervise, discipline, transfer, counsel and/or otherwise control Knepper. Specifically, Plaintiff argues that one or more of these actions should have been taken by the Moving Defendants as result of knowing of Knepper's violent behavior, substance abuse, and anti-social behavior exhibited while on the job as well as the history of violent actions toward Fyock. Furthermore, Plaintiff cites to *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3rd Cir. 2001) in arguing that the Moving Defendants tolerated and acquiesced in the "various abuses" committed by Knepper.

The Third Circuit has found that municipal liability can exist in the absence of liability of a police officer:

A finding of municipal liability does not depend automatically or necessarily on the liability of any police officer. Even if an officer's actions caused death or injury, he can only be liable under section 1983 and the Fourteenth Amendment if his conduct "shocks the conscience." *Id.* The fact that the officer's conduct may not meet that standard does not negate the injury suffered by the plaintiff as a result. If it can be shown that the plaintiff suffered that injury, which amounts to deprivation of life or liberty, because the officer was following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights, then the City is directly liable under section 1983 for causing a violation of the plaintiff's Fourteenth Amendment rights. The pursuing police officer is merely the causal conduit for the constitutional violation committed by the City.

*Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3rd Cir.1994) (footnote omitted).

In *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3rd Cir.2001), the Third Circuit stated that a municipality may be found liable for constitutional deprivations if "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Brown* at 214–215, citing *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A causal link may be established one of two ways: 1) by the municipality's adoption of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); or 2) by establishing a "causal link between the constitutional deprivation and a custom, 'even though such a custom has not received formal approval through the body's official decisionmaking

channels.' *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018." *Brown* at 215. "A 'custom, or usage, of [a] State' for § 1983 purposes 'must have the force of law by virtue of the persistent practices of state officials.' *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)." *Id.*

From a fair reading of the Plaintiff's Complaint, the Court understands that the Plaintiff is proceeding under the second option in *Brown* to prove the causal link in that the Plaintiff has plead in paragraph 30 of the Complaint:

> At all times material to Plaintiff's Complaint, Defendant, City of Johnstown, through its respective police department policy makers, Defendants, William Clark, and Donato Zucco, pursued *de facto* policies, practices and customs that were a direct and proximate cause of the unconstitutional killing of Plaintiff's Decedent and the other deprivations of Constitutional rights alleged herein, including, but not limited to, the failure to properly screen, supervise, discipline, transfer, counsel or otherwise control police officers who are known or should have been known to engage in violent behavior and/or drug and/or alcohol abuse.

(emphasis in the original).

■ Accepting as true the facts set forth in the factual background section above, and viewing the evidence in the light most favorable to the non-moving party, the Court must grant the Motion to Dismiss the § 1983 claims against Johnstown. The Plaintiff has set forth facts that support his theory that Johnstown demonstrated deliberate indifference to Fyock in that it was aware of Knepper's substance abuse and violent and anti-social behavior in addition to investigating his violent behavior toward Fyock on more than one occasion without ever arresting Knepper.

Such facts support the Plaintiff's claim of a *de facto* policy of Johnstown toward Knepper's behavior, specifically as it concerned the constitutional rights of Fyock. And in following the precedent of *Fagan*, it matters not whether Knepper was acting under color of law at the time of Fyock's shooting. However, the alleged facts accepted as true by this Court do not reveal a causal connection as required by the *Brown* precedent between the policy and the killing of Fyock on the evening of June 10, 2002. Knepper was not on duty at the time he shot and killed Fyock nor are there facts to establish that the Department was called or notified as to the situation at Fyock's residence on June 10, 2002 so as to require intervention by Johnstown through action by the Department. Had the Department been notified and ignored the call or responded but failed to arrest Knepper, the custom alleged to have been used by Johnstown toward Knepper and his known behavior would have embraced the situation which resulted in Fyock's murder. However, since the custom was not employed the evening of Fyock's death, no causal connection is established between the custom and Fyock's death.

■ Next, Plaintiff seeks to impose supervisory liability on Clark and Zucco based upon their actions "under color of law" as Chief of Police and Mayor respectively.

To impose supervisory liability, the Third Circuit has established a five-part test:

> In *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir.1989), this court identified the elements of a supervisory liability claim. The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an

unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. We emphasized that "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Sample*, 885 F.2d at 1118. Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a "relationship between the 'identified deficiency' and the 'ultimate injury.'" *Id.*

*Brown v. Muhlenberg Township*, 269 F.3d 205 (3rd Cir.2001).

In analyzing this test in regard to Clark, after accepting as true the allegations of the Complaint, all but one of the elements are sufficiently present. Clark followed *de facto* policies, practices and customs causing Fyock's death in that he failed to, *inter alia*, properly train, supervise, control, and discipline police officers known to have engaged in violent behavior or substance abuse as well as inadequate procedures for investigating complaints/allegation of police officer's violent behavior and substance abuse. Complaint ¶¶ 30, 31; the failure to implement such actions created an unreasonable risk of the ultimate injury in that the death of Fyock resulted from this inaction by Clark. Complaint ¶¶ 28, 32, 33; Clark was aware of such unreasonable risks in his role as the chief of police. Complaint ¶¶ 7, 10, 11, 23–25; and Clark was indifferent to the risk by the fact of this knowledge and his failure to act. *Id.*; Complaint ¶¶ 29–33.

As to the fifth element, as to whether the violation resulted from the failure to employ the supervisory practice or procedure, the facts do not specify how Fyock's killing resulted from the failure to employ the procedure. In following the precedent of *Sample*, the Court finds the alleged facts and accompanying argument do no more than argue that the death would not have occurred had Clark done something more than he actually did. No facts elucidate the deliberate indifference of Clark toward the problem of Knepper which resulted in Fyock's death. Without specific facts demonstrating a connection of Clark's deliberate indifference to the issue of Knepper's behavior that resulted in Fyock's death, the Plaintiff's claim against Clark under § 1983 must fail.

In analyzing the same allegations against Zucco, the supervisory claim must fail. The supervisory claim fails because there are no allegations that Zucco was aware of the unreasonable risk that Knepper's violent behavior would result in Fyock's death. Zucco, as mayor of Johnstown, is alleged by the complaint as being responsible for Clark's training and conduct as Chief of Police as well as the entire Department. Complaint ¶ 12. Zucco is also alleged to be responsible under law for "ensuring that the City of Johnstown police officers obey the regulations of the City of Johnstown Police Department and the laws of the Commonwealth of Pennsylvania and the United States." Complaint ¶ 13. However, Zucco is not alleged to be a member of the Department and only the Department and its members are alleged to have known about Knepper's substance abuse, violent behavior and Knepper's threats and conduct against Fyock. Zucco is not alleged to have possessed such knowledge.

In addition, this Court is permitted to consider public records as part of the record before it in evaluating a motion to dismiss without having to convert such

motion into a motion for summary judgment. *Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196 (3rd Cir.1993); *Weiner v. Quaker Oats Co.,* 928 F.Supp. 1372, 1380 (D.N.J. 1996) *rev'd on other grounds,* 129 F.3d 310 (3rd Cir.1997). To clarify the extent of Zucco's responsibilities as Mayor of Johnstown, the Court reviewed the Home Rule Charter as provided in the Pennsylvania Administrative Code.

The City of Johnstown, Pennsylvania is governed by a home rule charter with the form of government being a Council–Manager Form. 311 Pa Code § 11.1–112. Zucco's duties under the terms of the Johnstown charter is to fulfill one of the seats on City Council, being chairperson of the council, preside over the council and be the ceremonial representative for the municipality. 311 Pa.Code § 11.2.201; 311 Pa Code § 11.5–501. The Mayor shall also sign all ordinances. 311 Pa.Code § 11.5–501. However, the city manager appoints officers to supervise all departments, offices and agencies of the city. 311 Pa. Code § 11.6–605. The Manager also is responsible for hiring, suspension, removal of employees, enforcement of ordinances and regulations of Johnstown and for the direction and supervision of the administration of all departments, offices and agencies of Johnstown. 311 Pa.Code § 11.6–602. With these duties in mind, it is clear that the mayor in the City of Johnstown has no supervisory role over the Department. This fact coupled with the fact that Zucco is not alleged to have had knowledge of the behavior and substance abuse of Knepper on and off the job require the dismissal of the § 1983 claim against Zucco.

## II. STATE LAW CLAIMS FOR WRONGFUL DEATH AND SURVIVAL

The Moving Defendants argue that liability does not attach to Johnstown and the Department under the state law claims set forth in the Complaint because the provisions of governmental immunity attach. *See* 42 Pa.C.S.A. § 8541–8542. Moreover, the Defendants argue that Zucco and Clark have the same immunity of Johnstown and the Department because of 42 Pa.C.S.A. § 8545, which provides that local employees have the same immunity as local employing agencies and that Zucco and Clark have immunity for policy making discretion under 42 Pa.C.S.A. § 8546.

The Plaintiff's response is that the Moving Defendants' immunities are abrogated under 42 Pa.C.S.A. § 8550 and *Diaz v. Houck,* 159 Pa.Cmwlth. 274, 632 A.2d 1081 (1993) because of their willful misconduct. The Plaintiff also argues that 42 Pa.C.S.A. § 8545 does not immunize the Moving Defendants in the case *sub judice* because a state cannot immunize official conduct which violates rights protected through a § 1983 action citing to *Buskirk v. Seiple,* 560 F.Supp. 247 (E.D.Pa.1983). The Pennsylvania Political Subdivision Torts Claim Act reads in pertinent parts:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.C.S.A. § 8541.

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were

caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S.A. § 8542(a).

An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

42 Pa.C.S.A. § 8545.

In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf:

(1) Defenses which are available at common law to the employee.

(2) The defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law.

(3) The defense that the act of the employee which gave rise to the claim was within the policymaking discretion granted to the employee by law. For purposes of this subsection, all acts of members of the governing body of a local agency or of the chief executive officer thereof are deemed to be within the policymaking discretion granted to such person by law.

42 Pa.C.S.A. § 8546.

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S.A. § 8550.

■ The Court first recognizes the well-established rule that governmental immunity found under the Pennsylvania Political Subdivision Torts Claim Act is only applicable to state law claims and not federal civil rights actions. *See Wade v. City of Pittsburgh*, 765 F.2d 405 (3rd Cir. 1985).

■ "Traditionally, under the provisions of the Political Subdivision Torts Claims Act (Tort Claims Act), government officials are granted protection from the enforcement of judgments against them when they act within the scope of their employment." *Retenauer v. Flaherty*, 164 Pa.Cmwlth. 182, 642 A.2d 587 (1994) (footnote omitted referencing 42 Pa.C.S.A. §§ 8541–8542).

Judge Troutman in the District Court for the Eastern District of Pennsylvania found that in the application of 42 Pa. C.S.A. § 8550: "42 Pa.C.S.A. § 8550 jettisons only those immunities held by municipal employees and only then for forms of

willful misconduct. This section does not, however, abrogate the general retention of municipal immunity." *Buskirk v. Seiple,* 560 F.Supp. 247, 252 (E.D.Pa.,1983). The same interpretation of § 8550 has been found by Pennsylvania state courts. *See City of Philadelphia v. Brown,* 152 Pa. Cmwlth. 343, 618 A.2d 1236 (1992); *City of Philadelphia v. Glim,* 149 Pa.Cmwlth. 491, 613 A.2d 613, (1992).

■ With this understanding, the state law actions against Johnstown, and the Department, as a department of the municipality, cannot withstand the Defendants' Motion to Dismiss.[4] § 8550 leaves intact the protections of municipalities found in §§ 8541–8542. Therefore, it is clear that Johnstown and the Department are entitled to dismissal of the state law claims against them.

■ As for the state law claims against Zucco and Clark, the Court's analysis is not as simple. These two persons are employees of the municipality and will not be protected by the curtain of immunity if the Plaintiff has proven that their alleged actions are "willful misconduct" under § 8550.

For purposes of the Tort Claims Act, "willful misconduct" is synonymous with the term "intentional tort." *King v. Breach,* 115 Pa.Cmwlth. 355, 367, 540 A.2d 976, 981 (1988). The governmental employee must desire to bring about the result that followed his conduct or be aware that it was substantially certain to follow. *McNeal v. City of Easton,* 143 Pa.Cmwlth. 151, 598 A.2d 638 (1991);

*Williams v. City of Philadelphia,* 131 Pa.Cmwlth. 71, 569 A.2d 419 (1990).

*Kuzel v. Krause,* 658 A.2d 856, 859 (Pa. Commw.1995). Therefore, in order for the Plaintiff to prove the liability of Zucco and Clark for purposes of the case *sub judice,* it must be proven that Zucco and Clark desired to bring about Fyock's death or be aware that her death was substantially certain to follow from their actions.

■ The Court is bound to accept as true all factual allegations but is not bound to accept legal conclusions. *Gardiner v. Mercyhurst College,* 942 F.Supp. 1050 (W.D.Pa.1995)(Cohill, J.). Accepting as fact that members of the Department, including Clark, were aware of Knepper's violent behavior and substance abuse along with knowledge that police officers were called to Fyock's residence because of Knepper's violent behavior towards Fyock, the Court cannot conclude that Clark was substantially certain the Fyock would be *killed* by Knepper. The facts set forth a pattern in which it can be acceptable to find that physical violence toward Fyock would be substantially certain to occur, but no actions by Knepper, or knowledge on the part of members of the Department, specifically Clark, indicate that the death of Fyock would have resulted from what was known to Clark and the other members of the Department. Bodily harm is alleged to have been threatened by Knepper to Fyock but no death threats from Knepper to Fyock are alleged. Complaint ¶ 25. There is no alleged history of previous use by Knepper of a firearm to injure or attempt to injure anyone let alone mortally wound another person.

---

4. It has not been contested that the Department itself is not entitled to the governmental immunity. Even if such an issue was contested, it is evident that police departments are units of a local agencies and therefore entitled to governmental immunity found under 42 Pa.C.S.A. § 8541. *See Gunter v. Constitution State Service Co.,* 432 Pa.Super. 295, 638 A.2d 233 (1994) (holding that city's fire rescue squad was a unit of a local agency entitled to governmental immunity). *See also Guinn v. Alburtis Fire Co.,* 531 Pa. 500, 614 A.2d 218 (1992).

The facts simply do not demonstrate that Clark intended or was substantially certain that death would come to Fyock because of the violent nature of Knepper and his substance abuse. The liability of Zucco is even more strained upon accepting the facts of the Complaint as true. As stated above, Zucco, as mayor, is without any policymaking control and supervisory role over Clark. In the manager-council form of government, Zucco was not a part of the day-to-day operations of the Department nor are there separate allegations that he was aware of the several police calls to Fyock's residence because of Knepper's actions towards her as well as Knepper's violent behavior and substance abuse in general. The facts as alleged and accepted as true do not provide for the application of the § 8550 willful misconduct exception to the Pennsylvania Political Subdivision Torts Claim Act and, therefore, Clark and Zucco maintain their immunity under §§ 8541–8542, 8545 for the wrongful death and survival actions filed against them by the Plaintiff.

As a result, the wrongful death and survival actions filed against Johnstown, the Department, Zucco and Clark are hereby dismissed pursuant to the immunity provisions set forth in 42 Pa.C.S.A. §§ 8541–8542, 8545.

## CONCLUSION

Based upon the foregoing Memorandum Opinion, the 42 U.S.C. § 1983 claims against Defendants, William Clark, City of Johnstown Police Department, Donato Zucco and the City of Johnstown (Counts Two through Five) are dismissed. The claims based upon wrongful death and survival actions against Defendants, William Clark, City of Johnstown Police Department, Donato Zucco and the City of Johnstown (Counts Seven through Ten and Twelve through Fifteen) are dismissed.

Counts One, Six, and Eleven will proceed to trial.

**AND NOW,** this 25th day of March, 2004, after consideration of the Defendants City of Johnstown, City of Johnstown Police Department, Donato Zucco and William Clark's Motion to Dismiss, and in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED that Counts Two, Three, Four, Five, Seven, Eight, Nine, Ten, Twelve, Thirteen, Fourteen and Fifteen of the Complaint are Dismissed. IT IS FURTHER ORDERED that the remaining Defendant is to file an answer to the remaining counts of the Complaint which are Counts One, Six and Eleven within twenty days from the date of this order. IT IS SO ORDERED.