**Wayne G. RANKIN, Plaintiff,**

v.

**CITY OF PHILADELPHIA, Michael Gordon, James Coleman, Episcopal Long Term Care, Inc./Philadelphia Nursing Home, Defendants.**

**Civil Action No. 96–2882.**

United States District Court,
E.D. Pennsylvania.

March 31, 1997.

Anita F. Alberts, Doylestown, PA, for Plaintiff.

Albert L. D'Attilio, Adrian R. King, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Wayne G. Rankin ("Rankin") brought this action against defendants City of Philadelphia (the "City"), Michael Gordon ("Gordon"), James Coleman ("Coleman") and Episcopal Long Term Care, Inc./Philadelphia Nursing Home ("Episcopal") under 42 U.S.C.A. § 1983 (West 1994) and Pennsylvania's Whistleblower Law, 43 Pa.Stat.Ann. tit. 43, §§ 1421–1428 (West 1991). Rankin alleges that the defendants fired him because he refused to cover up health and safety violations he discovered in the course of his employment. He claims that this termination violated the First and Fourteenth Amendments of the United States Constitution and section 1423 of Pennsylvania's Whistleblower Law. Three of the defendants—the City, Gordon, and Coleman (collectively the "City defendants")—now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss portions of Rankin's complaint against them for failure to state a claim upon which relief can be granted. Specifically, they seek to dismiss Rankin's claim under Pennsylvania's Whistleblower Law, his claim for punitive damages under the Whistleblower Law, and his claim for punitive damages under 42 U.S.C. § 1983 against the City and against Gordon and Coleman insofar as he seeks to recover punitive damages against them in their official capacities. For the reasons stated below, I will deny the City defendants' motion to dismiss the Whistleblower claim, but I will grant the City Defendants' motion to dismiss the claim for punitive damages under the Whistleblower Law and under 42 U.S.C. § 1983 against the City and against Gordon and Coleman insofar as such damages are sought against them in their official capacities.

## I. PENNSYLVANIA'S WHISTLEBLOWER LAW

### A. The Statute

Section 1423 of Pennsylvania's Whistleblower Law provides in relevant part:

No employer may discharge . . . an employee . . . because the employee . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

Pa.Stat.Ann. tit. 43, § 1423(a) (West 1991). Section 1422 of the Whistleblower Law defines the following terms:

An **"employee"** is a "person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body."

An **"employer"** is a "person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body."

A **"good faith report"** is a "report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true."

**"Wrongdoing"** is a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."

Pa.Stat.Ann. tit. 43, § 1422 (West 1991). Crucial to the definition of "employee" and "em-

ployer" is the meaning of a **"public body,"** which is defined as follows:

(1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.

(2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.

(3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.

*Id.*

A person alleging a violation of the Whistleblower Act "may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation."[1] Pa.Stat.Ann. tit. 43, § 1424(a) (West 1991). The remedies available to a prevailing plaintiff under the Whistleblower Law are: "reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate." Pa.Stat.Ann. tit. 43, § 1425 (West 1991). Finally, a "person who, under color of an employer's authority, violates this act" may be liable for civil fines and, under certain circumstances, suspended from public service. *See* Pa.Stat.Ann. tit. 43, § 1426 (West 1991).

### B. The Complaint

Rankin claims that he is entitled to relief under the Whistleblower Law based on the following allegations:

"At all times relevant to this action, Plaintiff was employed by Episcopal Long Term Care Inc./Philadelphia Nursing Home under a contract with the City of Philadelphia." (Compl.¶ 1)

Defendant City of Philadelphia is "responsible for the Philadelphia Nursing Home, its 500 patients and approximately 500 workers comprising the nursing, administrative, and maintenance staff." (Compl.¶ 2)

Defendant Michael Gordon "presently works for the City as maintenance director of all facilities under the City Health Department jurisdiction," and previously worked as director of the Philadelphia Nursing Home physical plant when the City operated the Home. (Compl.¶ 3)

Defendant James Coleman is a City employee who "acted as a liaison or coordinator between the City and Episcopal ... in matters involving the PNH building." (Compl.¶ 4)

Episcopal is a "private," "non-profit corporation affiliated with Episcopal Hospital, Philadelphia, created to provide full administrative, operational and management services for the Philadelphia Nursing Home under a contract with the City of Philadelphia." (Compl.¶ 5)

"At all times relevant to this action, Defendant PNH [Episcopal] was an agent of the City of Philadelphia, and all PNH, officers, servants and employees, in particular PNH Executive Director Molly Hess, and PNH Financial Administrator James Scannapico, acted within the scope and course of their agency and in accordance with City directives, policies and practices." (Compl.¶ 6)

The City of Philadelphia leases the Philadelphia Nursing Home building from the Commonwealth of Pennsylvania for one dollar per year "to be used as a 500–bed nursing home for indigent City residents in need of care." (Compl.¶ 7)

The Lease between the City and Pennsylvania requires the City "to assume responsibility for all necessary repairs, renovations, sprinkler systems and other installations or improvements to fully comply with all building codes, fire,

---

1. Rankin appears to have brought this suit within the specified 180–day period; Rankin alleges he was fired on October 16, 1995, (Compl.¶ 29), and this action was filed on April 10, 1996.

safety, health and licensing requirements." (Compl.¶ 9)

Rankin was hired in February 1995 as Director of Plant Operations at the Philadelphia Nursing Home "to manage, direct, and supervise repairs and improvements to the PNH structure, to bring it into compliance with fire and building codes and licensing regulations." (Compl.¶¶ 11–12)

In the course of his employment, Rankin encountered various problems, including inoperable heating and cooling systems, defective sprinkler systems, corroding waste lines, unsanitary kitchen conditions, deficient fire code separations, and uncertain asbestos conditions. (Compl.¶¶ 13–21)

When Rankin spoke to Episcopal Executive Director Molly Hess about various fire code violations and asbestos problems he had discovered in the course of his job, she told him, " 'There isn't much we can do,' and put her index fingers to her lips, as though telling him to keep quiet. She said, 'They (City administrators) do not want to hear that. We won't see it (fixed) in our lifetime.' " (Compl.¶ 22)

Following a fire in August 1995, Rankin discovered the presence of asbestos in a room that reportedly did not contain asbestos according to records contained in an "asbestos book," a book prepared by Defendant Gordon. Rankin called Gordon and related the discrepancy between field tests and the "asbestos book." Rankin asked Gordon for help, but Gordon told him that " 'you have to go by the book,' " and that " 'That's what we go by, and that's what we're stuck with.' " When Rankin said that was " 'Bullshit,' " Gordon said " 'That's all I can do,' and hung up the phone." (Compl.¶¶ 23–26)

Rankin then called Defendant Coleman to obtain newer asbestos records. Coleman sent Rankin records a week later that were identical to those in the "asbestos book." Despite the unchanged records, "since field tests confirmed asbestos, City employees including Plaintiff were scheduled for hospital testing." (Compl.¶ 27)

Subsequently, Rankin was told by Episcopal Financial Administrator James Scannapico that Rankin's proposed plan to rectify unsanitary kitchen conditions had not been approved by the City. (Compl.¶¶ 19, 28)

On October 16, 1995, Rankin was fired. He asked Episcopal Financial Administrator James Scannapico why. Scannapico said " 'Your considerable talents and efforts are not compatible with the needs of this most unique building.' " Scannapico asked Rankin "to sign a Release Agreement promising not to sue [Episcopal] or the City in exchange for three weeks severance pay." (Compl.¶ 29)

Rankin "believes Defendant City administrators Gordon and Coleman told Defendant [Episcopal], i.e. Hess and Scannapico, to get rid of him before his persistent efforts to disclose and correct these violations closed down the nursing home." (Compl.¶ 31)

Rankin believes that the City Defendants and Episcopal wanted to keep the fire, health, and safety violations secret so that they could continue to obtain state and federal Medicaid and Medicare funding. (Compl.¶¶ 30, 32–34) Rankin believes that "Gordon and Coleman knew he would not keep the building's secrets." (Compl.¶ 33)

## C. The Motion to Dismiss

The City defendants move to dismiss Rankin's complaint for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). In reviewing a complaint for failure to state a claim, I must " 'accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom,' " *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993) (quoting *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990)), and "view them in the light most favorable to the nonmoving party," *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir.1989). A complaint may be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

In their motion to dismiss, the City defendants challenge Rankin's claim under the Whistleblower Law on five different grounds. They argue that the allegations in Rankin's complaint fail to establish that (1) the City defendants are Rankin's "employer," (2) Rankin is an "employee," (3) the City defendants (as opposed to Episcopal) "discharged" Rankin, (4) Rankin's reports concerned "wrongdoing," and (5) Rankin was discharged *because* he reported alleged violations. I will discuss each of these grounds in turn.

### 1. "Employer"

■ The City defendants argue that they are not Rankin's "employer" because Rankin alleges in his complaint that "[a]t all times relevant to this action, Plaintiff was employed by Episcopal Long Term Care Inc./Philadelphia Nursing Home," and thus not by the City of Philadelphia. (Def.'s Mot. Dismiss Count II of Pl.'s Compl. at 5.) Rankin responds by arguing that the City defendants were his employer because he and Episcopal were the City's agents and employees, acting under color of state law and performing governmental functions. (Pl.'s Br. Opposing Defs.' Mot. Dismiss Count II & Punitive Damage Claims at 2–7.)

■ Under the Whistleblower Law, an "employer" is a "person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." Pa.Stat.Ann. tit. 43, § 1422. The use of semicolons and the word "or" in the statutory definition suggests that a person who satisfies any one of the three descriptions is an "employer" for purposes of the Whistleblower Law, even if that person does not satisfy the other descriptions. This interpretation of "employer" is buttressed by the rather unreasonable result of the converse interpretation: to be an "employer," a person would have to be both a supervisor of the employee and a superior of that supervisor, that is, a superior of himself. Taking the disjunctive interpretation as the more reasonable reading of the definition of "employer," then any person who is "an agent of a public body" is an "employer."

Rankin has alleged that defendants Gordon and Coleman were employed by the City of Philadelphia. A "city" is a "public body." § 1422. Thus, under a straightforward application of the statutory language, Gordon and Coleman are agents of a public body and therefore "employers" under the Whistleblower Law.

■ Less straightforward is the City's objection that it is not an "employer." Although "employee" is defined as a person performing services for a public body, and although the City is a "public body," "employer" is not defined as a "public body." Instead, as discussed, an "employer" is either a "person supervising" an employee, or a superior of that supervisor, or an agent of a public body. Although it is conceivable that one or more of these terms could include a city, *cf. Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978) (holding that Congress intended to include municipalities among the "persons" held liable in actions under 42 U.S.C. § 1983), that interpretation is not the most natural reading of the statutory language.

■ I need not resolve this question whether the City is an "employer," however, because I conclude that the City is a proper defendant under the Whistleblower Law even if it is not an "employer." The Whistleblower Law does not expressly state who may be sued under the statute, but rather only states that a "person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages or both." Pa.Stat.Ann. tit. 43, § 1424(a). Among the remedies available under the Whistleblower Law are "reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, [and] actual damages." Pa.Stat.Ann. tit. 43, § 1425. Because back wages are a measure of lost compensation and an employee is generally compensated by the employing public body rather than the particular superior who may be the subject of an action under the Whistleblower Law, the provision for back wages leads me to conclude that the General

Assembly contemplated that a public body could be held accountable for a violation of the Whistleblower Law.[2]

The Pennsylvania Commonwealth Court has expressly held that a public body may be liable for damages under the Whistleblower Law. *See Retenauer v. Flaherty,* 164 Pa. Cmwlth. 182, 642 A.2d 587, 593 (1994) ("[W]e hold that if the actions constituting a violation of the Whistleblower Law fall within the scope of the public employee's authority, when acting only in his official capacity, the public body shall be responsible for any damages awarded the plaintiff. . . ."). I am uncertain whether the Pennsylvania Supreme Court would adopt *Retenauer,* however, at least insofar as the court in *Retenauer* relied on the Political Subdivision Tort Claims Act to derive its premise that a public body is generally liable for the acts of its officials taken in the scope of their official authority. *See id.* at 592. Because a public body is not always liable under the Political Subdivision Tort Claims Act for the official acts of its officials, *see* 42 Pa. Cons.Stat. Ann. §§ 8542(a)(2), 8550 (West 1982) (providing that a government official can be individually liable for acts—"crime, actual fraud, actual malice or willful misconduct"—taken pursuant to his official authority for which the public body remains immune), the court's premise appears at least questionable, and it is unclear to what extent this premise affected the court's decision.

To the extent the court in *Retenauer* relied on the nature of remedies available under the Whistleblower Law, however, *see Retenauer,* 642 A.2d at 592 (explaining that the plaintiff's superior "cannot accommodate the trial court's order to pay Retenauer back wages" and that "[o]nly the City can fully compensate an employee with monies from the municipal treasury"), I find the decision a persuasive indication of the position the Pennsylvania Supreme Court would adopt if it were to address this issue. Thus, as stated above, I conclude that the City may be held liable under the Whistleblower Law, even if it is not an "employer."

Accordingly, the City defendants' objection that they are not an "employer" under the Whistleblower Law does not provide grounds to dismiss Rankin's claim against them under the Whistleblower Law.

## 2. "Employee"

The City defendants argue that Rankin is not an "employee" under the Whistleblower Law because he "performed services for wages under a contract for hire *for Episcopal,* not the City of Philadelphia." (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 6.) Because he "works for a private corporation and *not* for a public employer," the defendants argue that Rankin is not a public employee. (*Id.*) Furthermore, they argue (without citation to authority) that "the Whistleblower Law was never meant to transform independent contractors into public bodies." (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 6–7.)

Rankin again responds by arguing that he and Episcopal were the agents and employees of the City defendants, acting under color of state law and performing governmental functions. (Pl.'s Br. Opposing Defs.' Mot. Dismiss Count II & Punitive Damage Claims at 2–7.)

The Whistleblower Law defines an "employee" as a "person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or

---

2. Although the City defendants did not raise the issue, I also conclude that the provision for back wages demonstrates legislative intent to waive governmental immunity otherwise available under the Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. §§ 8541–8542 (West 1982 & Supp.1996). *Cf. Verde v. City of Phila.,* 862 F.Supp. 1329, 1335 (E.D.Pa.1994) (holding that the Political Subdivision Tort Claims Act did not provide immunity to the City of Philadelphia from a claim brought under the Pennsylvania Human Relations Act because political subdivisions were explicitly included among "employ-

ers" who could be liable under that Act). In addition to the provision of back wages, I also find that the Whistleblower Law's general scheme further demonstrates a legislative waiver of immunity under the Political Subdivision Tort Claims Act. The Law essentially creates a statutory tort that applies only to governmental employers, and thus is not a cause of action of general application, such as the common law tort action for negligence, that was of most obvious concern to the General Assembly when it enacted the Political Subdivision Tort Claims Act.

implied, for a public body." § 1422. The City defendants do not contest the claim that Rankin performed services for wages under a contract of hire, but rather only that he did so "for a public body." In arguing that Rankin did not perform services "for a public body" because he was under a contract of hire with Episcopal, the City defendants apparently reason that the Whistleblower Law requires an employee to be under a contract of hire *with* the public body and furthermore that Episcopal is not a public body.

Without addressing whether Episcopal itself is a public body under the Whistleblower Law, I find the defendants' initial premise that the employee must be under a contract of hire *with* the public body unpersuasive. To begin with, the statute does not define an "employee" as a person performing services "under a contract of hire ... *with* a public body," but rather requires only that a person perform services "under a contract of hire ... *for* a public body." § 1422 (emphasis added). Moreover, although the defendants' interpretation is conceivable, the statutory language also admits of an alternative interpretation in which the substance of the definition is "[a] person who performs a service ... for a public body" and in which the intervening phrase "for wages or other remuneration under a contract of hire, written or oral, express or implied" simply describes the capacity in which the person serves. In other words, rather than imposing a requirement that the person performing services be in privity of contract with the public body, the "contract of hire" language under this interpretation serves to exclude volunteers, independent contractors, and others who might otherwise seek to bring an action under the Whistleblower Law.

The statutory scheme confirms this non-privity interpretation of "employee." In general, the Whistleblower Law prohibits an employer from firing (or otherwise discriminating against) an individual because that person reported "wrongdoing" or "waste." § 1423. The class of individuals who enjoy this protection is of course limited to those performing services for a public body, and a "public body," in turn, is defined predominantly by a specific list of various state and local governmental entities. § 1422. Furthermore, "wrongdoing" is a violation of a legal or ethical norm "designed to protect the interest of the public or the employer," and "waste" is the "substantial abuse, misuse, destruction or loss of funds or resources" belonging to the Commonwealth or local governmental entities. *Id.* Viewing these provisions together, then, it is apparent that the Whistleblower Law is designed to help promote efficient and ethical government by assuring employees they will not lose their jobs (or otherwise suffer) when they report inefficient, unethical, or illegal government practices. If the statute does not affirmatively encourage the discovery and disclosure of inefficient, unethical, or illegal government practices, it at least removes a large disincentive from doing so.

Included among the groups who are subject to the Whistleblower Law's prohibition on retaliatory firing is "an agent of a public body." § 1422. Nowhere does the statute require that an agent of a public body itself be a public body. Indeed, as noted above, the statute does not define "employer" as a "public body." Given the fact § 1422 of the Whistleblower Law expressly employs the term "public body" in the definition ("employee") immediately preceding the definition of "employer" and extensively defines the term in the second definition following the definition of "employer," this omission appears deliberate. Thus, rather than confining the statute's application strictly to conduct undertaken directly by public bodies, the definition of "employer" appears designed to extend the Whistleblower Law's scrutiny to conduct undertaken by public bodies through their agents. That is, to the extent the Whistleblower Law aims to weed out inefficient or illegal governmental practices, the inclusion of agents in the definition of "employer" reflects an intent to combat such practices even when they are carried out through the government's agents.

◼ Returning to the definition of "employee," a non-privity interpretation of "employee" is the necessary counterpart to the inclusion of "agent" in the definition of "employer." Any other interpretation would render the "agent" provision largely useless,

contrary to the general presumption that "the General Assembly intends the entire statute to be effective and certain." 1 Pa. Cons.Stat. Ann. § 1922(2) (West 1995). Under the privity interpretation urged by the City defendants, no matter how clearly a (non-public body) private corporation acts as the agent of a government body, its conduct would never be subject to the Whistleblower Law because the whistleblower would not be under a contract of hire with a public body, but only with a private corporation. As long as the agent was not itself a public body, the whistleblower would not be an "employee," even though the agent would be an "employer" and its conduct (along with that of its "public body" principal) obviously intended to be subject to the Whistleblower Law. Thus, to avoid rendering the "agent" provision largely toothless, "employee" must be interpreted to require only that the person perform services for a public body, even if that person's actual contract of hire is with a nonpublic body agent. Under this interpretation, the agent's status as a non-public body would not be a barrier to a whistleblower's action under the Whistleblower Law because, by virtue of the fact that an agent generally performs services for its principal and that an employee generally performs services for its employer, the whistleblower would be performing services for the public body.

Thus, Rankin is an "employee" under the Whistleblower Law as long as he was performing services for the City in his capacity as an employee of an agent of the City. Rankin has alleged that Episcopal was operating as an agent of the City and that he was employed by Episcopal to help it carry out its obligations to the City in the scope of its agency. He has alleged that he worked to keep the Philadelphia Nursing Home in compliance with all applicable health and safety regulations, an obligation that the City had under its Lease with the Commonwealth and for which it enlisted Episcopal to perform. He has adequately alleged that he was performing services for the City.

■ The City defendants object that the agreement between the City and Episcopal expressly disclaims any agency relationship between the two entities with respect to Episcopal's operation of the Philadelphia Nursing Home and that it instead establishes Episcopal as an independent contractor. They cite to provisions of the contract between Episcopal and the City that they claim establishes Episcopal as an independent contractor with control over its own hiring and firing of employees. (Def.'s Mot. Dismiss Count II of Pl.'s Compl. at 7–9.). This agreement, however, was not mentioned in Rankin's complaint, nor was it attached as an exhibit either to the complaint or to the defendants' motion to dismiss. Because the defendants offer me only a few selective quotations from this agreement in their brief, and because Rankin objects to the defendants' reliance on this agreement without an opportunity for further discovery and briefing, I will decline to consider this agreement for purposes of considering the defendants' motion to dismiss under Rule 12(b)(6). *See Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988) (explaining that a district court considering a motion to dismiss under Rule 12(b)(6) has the discretion to choose between excluding materials outside of the pleadings or converting the motion into a motion for summary judgment under Rule 56); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 491–96 (2d ed. 1990) (same).

■ The City defendants also argue that Rankin has not adequately alleged in the complaint an agency relationship between Episcopal and the City, but rather that he has only stated a legal conclusion. Given the minimal requirements in a "notice" pleading system, however, Rankin's allegations are sufficient to proceed with discovery to determine whether the relationship between Episcopal and the City was one of agent and principal. *See Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993) ("The complaint will be deemed to allege sufficient facts if it is adequate to 'put the proper defendants on notice of the essential elements of plaintiffs' cause of action.'" (quoting *District Council 47, AFSCME v. Bradley*, 795 F.2d 310, 313 (3d Cir.1986))); 5 Wright & Miller, *supra*, § 1216, at 153–63. Everything that

Rankin has alleged could be consistent with such a relationship, and he has not alleged any fact that would clearly negate an agency relationship. As the Supreme Court has explained, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Accordingly, the City defendants' objection that Rankin has failed to allege that he was an "employee" does not provide grounds for granting their motion to dismiss Rankin's Whistleblower claim.

### 3. "Discharge"

The third element of Rankin's Whistleblower claim that the City defendants challenge is the claim that the City defendants (as opposed to Episcopal) were responsible for firing Rankin. They argue that they cannot be held liable under § 1423 for discharging Rankin "because Episcopal is an independent contractor and not an agent of the City" and the City therefore "was powerless to exert any control on Episcopal's decision to terminate the Plaintiff." (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 9.) The City defendants again argue that Rankin failed to plead any factual basis to support the alleged agency relationship between Episcopal and the City. They also cite to provisions of the agreement between Episcopal and the City that they claim expressly reject an agency relationship and leave personnel decisions exclusively within Episcopal's authority. (*Id.* at 8–9.)

Rankin responds by relying on his allegations that he and Episcopal were agents of the City and thus subject to its control. Rankin also objects that the defendants may not support a motion to dismiss under Rule 12(b)(6) by citing to an agreement that was not alleged in or attached to the complaint and that they demand a degree of factual specificity appropriate for summary judgment rather than a motion to dismiss. (Pl.'s Br. Opposing Defs.' Mot. Dismiss Count II & Punitive Damage Claims at 1–2, 6–7, 9, 12–13.)

Because the City defendants' objection that they did not "discharge" Rankin within the meaning of § 1423 rests on their argument that Episcopal was not an agent of the City, and because as discussed above, I have already resolved this argument against the defendants, this objection does not state grounds to grant the City defendants' motion to dismiss Rankin's Whistleblower claim.

### 4. "Wrongdoing"

■ The fourth element of Rankin's claim that the City defendants' challenge is his claim that the substance of his complaints to the defendants concerned "wrongdoing." The defendants argue that Rankin failed to plead facts sufficient to determine whether the City concealed potential health or safety violations. They also argue that Commonwealth inspectors routinely found the Philadelphia Nursing Home to be in compliance with applicable health and safety codes. Finally, they object that Rankin's allegation of falsified asbestos records is based on a mistaken understanding that all asbestos, rather than simply hazardous asbestos, must be listed in the "asbestos book." (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 9–11.)

Rankin responds by relying on his allegations that the Philadelphia Nursing Home was in violation of numerous health and safety codes and that the asbestos records were incomplete. He also argues that the defendants' admission that Commonwealth inspectors failed to find health and safety violations shows that the City defendants either concealed such violations or that the inspectors were in complicity with the City. (Pl.'s Br. Opposing Defs.' Mot. Dismiss Count II & Punitive Damage Claims at 11–12.)

Turning to the statute, the Whistleblower Law prohibits an employer from firing an employee who makes a good faith report of wrongdoing. § 1423. "Wrongdoing" is defined as a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the

interest of the public or the employer." § 1422.

 The plain language of the statute is sufficient to dispose of the City defendants' first objection. Nowhere in the definition of "wrongdoing" is a requirement that the violations be concealed. Nor does any other provision of the Whistleblower Law require a showing that the employer attempted to conceal such violations, and the defendants have not identified any other authority imposing such a requirement. Thus, the defendants' objection that Rankin failed to plead facts sufficient to determine that the City defendants concealed the violations is simply irrelevant. Rankin has alleged that the Philadelphia Nursing Home was in substantial violation of numerous health and safety requirements. Moreover, health and safety regulations are enactments "designed to protect the interest of the public." [3] Therefore, Rankin has adequately alleged "wrongdoing" for purposes of the Whistleblower Law.

The City defendants' remaining objections are based on matters not alleged in the complaint. They argue that even though Rankin alleges numerous health and safety violations, no violations actually existed because Commonwealth inspectors did not find any, and they argue that even though Rankin alleges the asbestos records were inaccurate, the asbestos records actually were accurate because they only list hazardous asbestos and the asbestos Rankin found was not hazardous. These arguments are appropriate at the summary judgment stage of litigation and not in support of a motion to dismiss, where I must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). As with the defendants' citation to the agreement between Episcopal and the City, I do not find that these objections in the form they are now presented warrant converting the defendants' motion into one for summary judgment. Therefore, the defendants' objections that Rankin failed to allege "wrongdoing" do not provide grounds for granting their motion to dismiss Rankin's Whistleblower claim.

## 5. Retaliation

 The City defendants' last objection to Rankin's Whistleblower claim is that he failed to allege facts sufficient to determine that he was fired in retaliation for reporting health and safety violations. The defendants argue that Rankin's only allegation concerning Gordon and Coleman is the statement that he "believes Defendant City administrators Gordon and Coleman told Defendant PNH, i.e. Hess and Scannapico, to get rid of him before his persistent efforts to disclose and correct these violations closed down the nursing home," (Compl.¶ 31), and that this allegation is insufficient to state a claim of retaliation under *Gray v. Hafer*, 168 Pa. Cmwlth. 613, 651 A.2d 221 (1994), *aff'd*, 542 Pa. 607, 669 A.2d 335 (1995). (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 11.) Furthermore, the defendants

---

**3.** I do not understand *Gray v. Hafer*, 168 Pa. Cmwlth. 613, 651 A.2d 221 (1994), *aff'd*, 542 Pa. 607, 669 A.2d 335 (1995), to state anything to the contrary. In *Gray*, the Commonwealth Court interpreted the phrase "to protect the interest of the public" to mean that "a statute or regulation is of the type that the employer is charged to enforce for the good of the public or is one dealing with the *internal administration* of the governmental employer in question." *Id.*, 651 A.2d at 224. The court was addressing, however, the question "whether 'wrongdoing' is established by reporting violations not only of crimes of the employer but of third parties." *Id.* It was in this context, in which the employee reports violations of a third party rather than those of the employer, that the court determined that "wrongdoing" should be limited to violations of statutes the employer has a duty to enforce. The court explained that "[t]o interpret otherwise would mean that when reporting any violation, e.g., that Temple University officials received parking tickets—a matter that neither Gray [the whistleblower] nor the Auditor General [his employer] has anything to do with—that would fall within the definition of wrongdoing." *Id.* Here, of course, Rankin is alleging that the violations were committed by his employer, a matter his employer certainly does have something to do with, and they are violations of regulations generally "designed to protect the interest of the public." I have no reason to believe that the court in *Gray* or the Pennsylvania Supreme Court, were it to address this issue, would find these violations beyond the scope of "wrongdoing," even if they are violations of statutes that Rankin's employer is not specifically charged to enforce.

argue that Rankin's allegations disclose a two-month gap between his contact with Gordon and Coleman and his termination and that in the absence of an account for this delay, the remoteness between Rankin's report and his termination is too great to sustain a claim under the Whistleblower Law, as stated in *Lutz v. Springettsbury Township,* 667 A.2d 251 (Pa.Cmwlth.1995). (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 12.)

Rankin responds that the City defendants mistakenly rely on *Gray* and *Lutz* because neither case is on point and that his allegations of retaliation by the City defendants are sufficient to survive a motion to dismiss. (Pl.'s Br. Opposing Defs.' Mot. Dismiss Count II & Punitive Damage Claims at 9.)

Turning to the complaint, Rankin has alleged more than merely his belief that Gordon and Coleman directed his superiors at Episcopal to fire him. Rankin also alleges that when he spoke to Episcopal Executive Director Molly Hess about various fire code violations and asbestos problems, she told him " 'There isn't much we can do,' and put her index fingers to her lips, as though telling him to keep quiet. She said, 'They (City administrators) do not want to hear that. We won't see it (fixed) in our lifetime.' " (Compl.¶ 22.) Ms. Hess's statement could reasonably give rise to the inference that the authority to approve repair projects remained with the City and that the City administrators had made known to Episcopal officials their intention not to approve such projects, at least those of the nature that Rankin mentioned in his conversation with Ms. Hess. Furthermore, Ms. Hess's statement that the City administrators "do not want to hear that" could reasonably give rise to an inference that they had also made known to Episcopal officials their desire that reports of such violations not be disclosed to them or to anyone else.

Rankin also alleges that Episcopal Financial Administrator James Scannapico told Rankin that his proposed plan to rectify unsanitary kitchen conditions had not been approved. (Compl.¶ 28.) This allegation also gives rise to the inference that the City retained authority to approve projects and that it did not intend to approve such projects, even when needed to remedy health code violations. Rankin also alleges that he contacted Gordon and Coleman about inaccurate asbestos records, which Gordon was responsible for maintaining, and that both were unresponsive to his requests for updated, accurate records, and indeed that Gordon hung up on Rankin when he insisted on obtaining better records. (Compl.¶¶ 23–27.) These allegations support the inference that Gordon and Coleman were not interested in remedying health and safety violations and that they were displeased with Rankin's efforts to do so. Finally, when Rankin was fired, Mr. Scannapico requested Rankin to sign a release agreement promising not to sue Episcopal or the City in exchange for severance pay. (Compl.¶ 29.) This allegation is also consistent with Rankin's claim that the City retained control over Episcopal's personnel decisions.

The foregoing inferences are not the only inferences that can be drawn from Rankin's allegations, of course, but they are permissible inferences and for purposes of considering a motion to dismiss, I must draw all such inferences in Rankin's favor. *Rocks v. City of Phila.,* 868 F.2d 644, 645 (3d Cir.1989). Accepting all of Rankin's allegations as true and drawing all favorable inferences from them, then, I conclude that Rankin's Whistleblower claim cannot be dismissed for failure to allege retaliation by the City defendants. Rankin's allegations are consistent with a set of facts in which the City had authority to approve repair projects for the Philadelphia Nursing Home, the City did not wish to expend funds on such projects, the City did not want Episcopal to disclose health and safety violations that would necessitate such projects, and the City could require Episcopal to terminate particular employees. Given this background, and given the nature of Rankin's contact with Gordon and Coleman in August 1995 and the City's consideration and rejection of his proposed kitchen project at some unspecified time thereafter before he was fired in October 1995, Rankin's allegations are consistent with retaliation by the City defendants. Although Rankin may ultimately be unable to prove such retaliation,

he has alleged enough at this stage to survive a motion to dismiss. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957))).

As for *Gray* and *Lutz,* the cases that the City defendants rely on, I find neither compelling.[4] The defendants cite *Gray* for the proposition that a plaintiff suing under the Whistleblower law must "show by concrete facts or surrounding circumstances that the report led to their dismissal, such as that there was specific direction or information they received not to file the report or there would be adverse consequences because the report was filed." *Gray v. Hafer,* 168 Pa. Cmwlth. 613, 651 A.2d 221, 225 (1994), *aff'd,* 542 Pa. 607, 669 A.2d 335 (1995). Defendants argue that Rankin fails to meet this standard because he alleges only a belief that Gordon and Coleman told Episcopal to fire him. (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 11.) As explained above, however, Rankin alleges more than a mere belief and in fact does allege facts and circumstances surrounding his termination that support his claim of retaliation. Indeed, Ms. Hess's warning that the City administrators did not want to hear about the fire code violations appears similar in substance to *Gray*'s illustrative "concrete facts or surrounding circumstances" that "there was specific direction or information they received not to file the report or there would be adverse consequences because the report was filed."

Moreover, the court in *Gray* announced the standard quoted above based on its conclusion that when "one who, as part of his or her regular job duties, files reports of waste or wrongdoing based on wrongdoing *outside the governmental entity that he is charged with seeking out,* that person must make more than a general statement that a report was filed and, within a given amount of time, the employee was fired as a result." *Gray,* 651 A.2d at 225 (emphasis added). The plaintiff in *Gray,* as part of his job with the Pennsylvania Department of Auditor General, issued a report of wrongdoing committed by a research center at Temple University, which was not his employer, but rather a third party entity that he was assigned to investigate. *See id.* at 223. Furthermore, the plaintiff merely alleged that he filed his report in May 1993, that a Temple University employee requested a copy of the report from the Department of Auditor General in September 1993, and that he was forced to resign later that same month. *See id.* Given the fact that the plaintiff's report concerned the wrongdoing of a third party, rather than his governmental employer, the court found that a higher pleading standard was necessary. Otherwise, if it "were to adopt this minimal pleading requirement, every police officer or other employee involved in investigations who filed reports, founded or unfounded, that were not acted upon by their department heads, would automatically make out a prima facie case if they were terminated." *Id.* at 225.

Here, of course, Rankin's reports concerned the alleged wrongdoing of his employer, and thus the concerns motivating the court in *Gray* and the resulting standard it announced there are not in issue here. In any case, the court in *Gray* was specifying Pennsylvania pleading requirements and its call for "concrete facts or surrounding circumstances" must be considered in the context of the case before it, in which the plaintiff's pleadings were much more barren than Rankin's are here. Thus, I do not find anything in *Gray* that warrants dismissing Rankin's complaint for failure to plead retaliation adequately.

---

4. When deciding an issue of state law that has not been addressed by the Pennsylvania Supreme Court, a federal court must "forecast the position the supreme court of the forum would take on the issue." *Clark v. Modern Group Ltd.,* 9 F.3d 321, 326 (3d Cir.1993); *see also Smith v. Calgon Carbon Corp.,* 917 F.2d 1338, 1341 (3d Cir.1990)

(stating that a federal court must " 'predict the position which [the Pennsylvania Supreme Court] would take in resolving this dispute' " (quoting *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 364 (3d Cir.1990))). Thus, I am not bound by decisions of the Pennsylvania Commonwealth Court.

The City defendants cite *Lutz* for the proposition that a Whistleblower claim must be dismissed if the plaintiff fails to demonstrate a connection between his report and his subsequent termination. They emphasize the court's statement in *Lutz* that the employee there had "in no way attempted to explain the remoteness in time between the 'report' and the discharge, stating only the fact that both occurred," *Lutz v. Springettsbury Township*, 667 A.2d 251, 254 (Pa. Commw.Ct.1995), and suggest that Rankin's claim must also fail because he has similarly failed to explain the "remoteness" between his contacts with Gordon and Coleman in August 1995 and his termination in October 1995. (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 12.)

As discussed above, however, Rankin alleged that during the interval between his phone conversations with Gordon and Coleman in August 1995 and his termination in October 1995, the City rejected his proposed project to rectify unsanitary kitchen conditions. (Compl. ¶ 28.) Thus, even if Rankin did not speak directly with the City defendants about the kitchen project as he had about the asbestos problems, the City was aware of at least a second report (the proposed kitchen project) by Rankin that was brought to its attention at some shorter period of time before his termination. Thus, the time delay between Rankin's reports and his termination is not as "remote" as defendants assert.

More importantly, *Lutz* was decided under a much different set of facts. The plaintiff in *Lutz*, a director of a wastewater treatment facility, had been assigned by his employer, a township, to investigate its suspicion that the wastewater facility had been undercharging neighboring municipalities and to present a report. *See Lutz*, 667 A.2d at 252. The plaintiff found that the facility had indeed been undercharging the municipalities, and he recommended several options to remedy the problem. *See id.* The Township did not adopt any of these options, but rather decided to absorb the deficit. *See id.* Several months later, the plaintiff was fired, and he sued under the Whistleblower Law. *See id.*

In rejecting his claim, the court expressed doubt that his report was a "report" of "waste" within the meaning of the Whistleblower Law, given that the employee "did not begin the investigation on his own, nor did he allege in his report any illegal or improper conduct by [his employer] regarding the deficit." *Id.* at 254. In any case, the court rejected the plaintiff's claim for a failure to "demonstrate any connection between that report and his firing." *Id.* The plaintiff in *Lutz* had maintained in oral argument that he only had to allege "the mere fact that he was terminated at some time after his report" and indeed the court found that "[n]ot only did the events occur months apart, but there is not even an innuendo of any nexus between the two or an allegation of maliciousness on Employer's part." *Id.* Thus, in objecting to the "remoteness" in time between the plaintiff's report and termination, the court in *Lutz* was considering a case in which no link had been suggested between the report and subsequent termination except for their chronological sequence in time, a case in which any possible claim would seem to depend heavily on a close proximity in time between the two. Here, of course, Rankin has alleged a much different set of events, and as explained above, these allegations do demonstrate a connection between his reports and subsequent termination. Accordingly, I do not find any basis in the City defendants' objection that Rankin failed to plead retaliation to grant their motion to dismiss Rankin's Whistleblower claim.

## II. PUNITIVE DAMAGES

### A. 42 U.S.C. § 1983

In count I of the complaint, Rankin requests the award of punitive damages under 42 U.S.C. § 1983 against all defendants for violations of his First and Fourteenth Amendment rights. In their motion to dismiss, the City defendants seek to dismiss Rankin's claim for punitive damages under § 1983 against the City and against Gordon and Coleman in their official capacities. Gordon and Coleman do not challenge Rankin's request for punitive damages against them in their individual capacities. (Defs.' Mot. Dismiss Count II Pl.'s Compl.)

### 1. The City of Philadelphia

The City defendants argue, and Rankin concedes, that municipalities are not liable under 42 U.S.C. § 1983 for punitive damages. (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 13; Pl.'s Br. Opposing Defs.' Mot. Dismiss Count II & Punitive Damage Claims at 7.) Indeed, the Supreme Court has held just that. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). Accordingly, I will grant the defendants' motion to dismiss Rankin's claim for punitive damages under § 1983 against the City of Philadelphia.

### 2. Gordon and Coleman

■ Gordon and Coleman argue that they are not liable for punitive damages under § 1983 in their official capacities because a suit against them in their official capacity is really only a suit against the City, and the City, as discussed above, is immune from punitive damages under *City of Newport*. (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 13–14 (citing *Hafer v. Melo*, 502 U.S. 21, 23–25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991)).) Rankin relies on *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823 (3d Cir.1994) to support his argument that Coleman and Gordon can be held liable for punitive damages under § 1983. (Pl.'s Br. Opposing Defs.' Mot. Dismiss Count II & Punitive Damage Claims at 7–8.) The City defendants object that Rankin's reliance on *Feldman* is misplaced because the punitive damages in that case were awarded against the city officials in their individual capacities only, whereas the City defendants in this case only seek to dismiss the claim for punitive damages against them in their official capacities. (Defs.' Resp. Pl.'s Answer Opposing Defs.' Mot. Dismiss Count II Pl.'s Compl. at 3.)

In *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the United States Supreme Court explained that "the real party in interest in an official-capacity suit is the governmental entity and not the named official" and that "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *See id.* at 25, 112 S.Ct. at 362 (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985)). Thus, whereas a state official could be sued under § 1983 in her individual capacity (even for actions taken in her official capacity), *see id.* at 31, 112 S.Ct. at 364–65, she could not be sued for monetary damages under § 1983 in her official capacity because such a suit is really a suit against the State, and a State is not a "person" who can be sued under § 1983, *see id.* at 25–26, 112 S.Ct. at 361–62 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).

Under *Hafer*, the City defendants are entitled to assert any immunity the City has as a defense to any claim made against them in their official capacities. Therefore, because the City is immune from punitive damages under *City of Newport*, Gordon and Coleman are also immune from punitive damages under § 1983 in their official capacities.

As the defendants assert, Rankin's reliance on *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823 (3d Cir.1994) is misplaced. In *Feldman*, a jury awarded punitive damages against the defendants in their individual capacities, and the United States Court of Appeals for the Third Circuit affirmed. *See id.* at 828. Moreover, on appeal, the defendants challenged the award of punitive damages only on grounds that the evidence was insufficient to justify punitive damages (that is, that their conduct had not been "outrageous" enough to warrant punitive damages), not on grounds that they were immune from punitive damages. *See id.* Thus, the Third Circuit had no occasion in *Feldman* to consider whether punitive damages could be awarded against an official in his official capacity.

Accordingly, I will grant the City defendants' motion to dismiss Rankin's claim for punitive damages under § 1983 against Gordon and Coleman in their official capacities.

### B. Pennsylvania's Whistleblower Law

■ In count II of the complaint, Rankin requests the award of punitive damages under the Whistleblower Law against all defen-

dants. In their motion to dismiss, the City defendants argue that they are not liable for punitive damages under the Whistleblower Law because § 1425, which sets forth the remedies available to a successful plaintiff under the Whistleblower Law, does not mention punitive damages. (Defs.' Mem. Law Supp. Mot. Dismiss Count II Pl.'s Compl. at 12–13.)

Rankin responds by arguing that the City defendants are liable for punitive damages under the Whistleblower Law because the defendants in *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823 (3d Cir.1994), who were sued under the First and Fourteenth Amendments and the Whistleblower Law, were held liable for punitive damages. Rankin also relies on *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984), in which the Pennsylvania Supreme Court provided that punitive damages could be awarded for outrageous conduct. (Pl.'s Br. Opposing Defs.' Mot. Dismiss Count II & Punitive Damage Claims at 7–8.)

The City defendants object that the Third Circuit in *Feldman* never addressed the question whether punitive damages could be obtained under the Whistleblower Law. Furthermore, they argue that if punitive damages are available under the Whistleblower Law, they can only be imposed on Coleman and Gordon in their individual capacities because Pennsylvania law prohibits the award of punitive damages against municipalities and municipal officials in their official capacities. (Defs.' Resp. Pl.'s Answer Opposing Defs.' Mot. Dismiss Count II Pl.'s Compl. at 3–4 (citing *Feingold v. Southeastern Pa. Transp. Auth.*, 512 Pa. 567, 517 A.2d 1270 (1986) and *Township of Bensalem v. Press*, 93 Pa.Cmwlth. 235, 501 A.2d 331 (1985)).)

Section 1425 of the Whistleblower Law provides that a court may order "reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies." Furthermore, a court "may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees." Finally, under § 1426 of the Whistleblower Law, a "person who, under color of an employee's authority, violates this act shall be liable for a civil fine of not more than $500" and, under certain circumstances, suspended from public service.

Nowhere among these remedies does the Whistleblower Law mention punitive damages. Nor does this omission appear to be an oversight on the part of the General Assembly. The statute sets forth a comprehensive list of available remedies, ranging from back wages and reinstatement to damages and attorney's fees to civil fines and suspension. Such a detailed list of remedies suggests that the General Assembly carefully considered the relief it deemed appropriate and set forth in the statute an exhaustive list of remedies it thought necessary or desirable to achieve the statute's purposes. Furthermore, the General Assembly did not include punitive damages among this list, but instead chose to use the phrase "actual damages," which generally connotes compensatory damages. Moreover, it seems rather implausible that a General Assembly contemplating "actual damages" would simply overlook the possibility that punitive damages (or treble damages or some other variant) could also be added to the mix. Thus, the omission of punitive damages from sections 1425 and 1426 persuades me that the General Assembly deliberately chose not to extend this remedy to plaintiffs under the Whistleblower Law.

Moreover, a contrary result would conflict with the directions of both the General Assembly and the Pennsylvania Supreme Court that statutory remedies must generally be construed as exclusive. *See* 1 Pa. Cons.Stat. Ann. § 1504 (West 1995) ("In all cases where a remedy is provided ... by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect."); *In re 1632 S. Broad St.*, 372 Pa. 557, 94 A.2d 772, 773 (1953) (" 'When a statute provides a remedy by which a right may be enforced, no other remedy than that afforded by the statute can be used.' " (quoting *Derry Township Sch. Dist. v. Barnett Coal Co.*, 332 Pa. 174, 2 A.2d 758, 760 (1938))). Thus, I conclude that

punitive damages are not an available remedy under the Whistleblower Law.

I do not find anything in *Feldman* and *Feld*, the cases Rankin relies on, that suggests the Pennsylvania Supreme Court would hold otherwise if it were to consider whether punitive damages are available under the Whistleblower Law. In *Feldman*, the plaintiff argued that he was terminated for "whistleblowing" and that this termination violated the First Amendment and the Whistleblower Law. *See Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 826–27 (3d Cir.1994). In its recitation of the facts, the Third Circuit in *Feldman* states that the jury "returned a verdict in favor of Feldman and against defendants" and that it awarded compensatory and punitive damages (against the defendants in their individual capacities). *See id.* at 828. Thus, it appears that the verdict may have been a general verdict and that it is therefore unclear whether the punitive damages were awarded for the Whistleblower claim or simply for the § 1983 claim.

On appeal, the defendants did not challenge the availability of punitive damages under the Whistleblower Law (or under 42 U.S.C. § 1983), but rather only argued that their conduct did not rise to the level of conduct that warrants punitive damages. *See id.* at 833. In disposing of their arguments, the Third Circuit explained that punitive damages may be awarded in a § 1983 action if the defendant's conduct is " 'motivated by evil motive or intent,' " or if it " 'involves reckless or callous indifference to the federally protected rights of others.' " *Id.* (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983)). Furthermore, the Third Circuit noted that the Pennsylvania Supreme Court has similarly provided that punitive damages may be imposed for " 'conduct that is outrageous,' " or " 'because of the defendant's evil motive or his reckless indifference to the rights of others.' " *Id.* (quoting *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984)). The Third Circuit concluded by stating that the jury could have inferred that the defendants' "conduct sank to the levels of conduct that justify imposition of punitive damages under both federal and Pennsylvania law." *Id.*

Although the Third Circuit did uphold an award of punitive damages in a case that was submitted to the jury in part on the basis of the Whistleblower Law, its opinion in *Feldman* is not entirely clear. Certainly, the Third Circuit did not explicitly address the availability of punitive damages under the Whistleblower law, nor was it ever asked to address that issue. Moreover, although it appears that the Third Circuit addressed the Pennsylvania standards for awarding punitive damages because the jury's general verdict left open the possibility that the punitive damages were awarded at least in part for a violation of the Whistleblower Law, nowhere is this explicitly stated. Finally and most importantly, the Third Circuit did not explain why a court may award punitive damages for the violation of a statute in which punitive damages are conspicuously absent from the legislature's choice of remedies.

The Third Circuit cites *Feld v. Merriam*, which Rankin also relies on, as authority for awarding punitive damages in *Feldman*. Although the Pennsylvania Supreme Court defined in *Feld* the standard for imposing punitive damages ("outrageous" conduct, "evil motive," or "reckless indifference"), *see Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984), it did not define the standards for identifying those causes of action in which punitive damages are an appropriate remedy. The cause of action considered in *Feld* itself was a common law action in tort (landlord's duty to protect tenants from the criminal acts of third persons), a cause of action in which punitive damages are traditionally an appropriate remedy. *See id.* at 744–45. Whether punitive damages are an appropriate remedy for violation of a cause of action created by statute, wherein the legislature specifically provides for the remedies, is a question the court in *Feld* did not consider. Thus, although the Third Circuit relies on *Feld* to identify the proper standard for imposing punitive damages, the Third Circuit offers no reason (nor does *Feld* supply any reason) to support the proposition that punitive damages are a permissible remedy under the Whistleblower Law. In the absence of any discussion of this issue, and given the fact that the Third Circuit was never asked

to consider whether punitive damages are available under the Whistleblower Law, I do not find *Feldman* (nor *Feld*) instructive on how the Pennsylvania Supreme Court would resolve this issue.

Finally, I note that the Pennsylvania Supreme Court has expressly stated that punitive damages are not an independent cause of action. *See Feingold v. Southeastern Pa. Transp. Auth.*, 512 Pa. 567, 517 A.2d 1270, 1276 (1986) (" '[T]he right to punitive damages is a mere incident to a cause of action ... and not the subject of an action in itself.' " (quoting *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648, 652 (1959))). Thus, no matter how "outrageous" Rankin may claim the defendants' conduct has been, Rankin cannot obtain punitive damages for that "outrageousness" unless he can first show that the conduct labeled as "outrageous" is itself the basis of a cause of action, and then that that cause of action permits the award of punitive damages. Because the Whistleblower Law is the only cause of action stated in count II of the complaint, Rankin must show that the Whistleblower Law permits the award of punitive damages before he may claim that the defendants' conduct was "outrageous" enough to warrant the award of punitive damages in his case. As explained above, I have concluded that the Whistleblower Law does not permit the award of punitive damages, and thus I find no basis for awarding punitive damages under count II of Rankin's complaint.

Accordingly, I will grant the City defendants' motion to dismiss Rankin's claim for punitive damages under count II of the complaint for alleged violations of the Whistleblower Law.

## CONCLUSION

To conclude, I have found that Rankin has stated a claim against the City defendants under the Whistleblower Law, and thus I will deny the defendants' motion to dismiss count II of the complaint. I have also found, however, that Rankin cannot recover punitive damages under the Whistleblower Law, and thus I will grant the defendants' motion to dismiss Rankin's claim for punitive damages under count II of the complaint. Finally, I

have found that Rankin cannot recover punitive damages from the City under 42 U.S.C. § 1983 and that he cannot recover punitive damages against Gordon and Coleman in their official capacities under 42 U.S.C. § 1983, and therefore I will grant the defendants' motion to dismiss Rankin's claim for punitive damages under count I of the complaint against the City and against Gordon and Coleman in their official capacities.